## DAYTON v. RICE ET AL.

1. **Tax Sale**: MORTGAGOR MUST PAY TAXES. It is the duty of the mortgagor to pay the taxes, and he cannot set up a title having its origin in a failure to perform this duty, as against the mortgagee.

2. ——: REDEMPTION. Where land was sold at sheriff's sale, and before the time for redemption had expired a tax deed was executed to the same land, the purchase by the judgment debtor, before the expiration of the right to redeem, of the outstanding tax title, will be regarded in equity merely as the discharge of his obligation to redeem from the tax sale.

*Appeal from Marshall Circuit Court.*

WEDNESDAY, DECEMBER 12.

THIS is an action in equity to quiet the title in plaintiff to the E. ½ of the N. W. ¼ of section 34, township 83, range 18. The cause was tried by the court on written evidence, and a decree was entered for plaintiff as prayed. The defendants appeal. The facts are stated in the opinion.

*Brown & Binford*, for appellant.

*Caswell & Meeker* and *Henderson & Norton*, for appellee.

DAY, CH. J. The facts of the case as deduced from the evidence are as follows: On the 3d day of March, 1874, the First National Bank of Marshalltown obtained judgment against Wells S. Rice, M. W. Rice, and others, for the sum of $1,380.50 and costs, and a decree of foreclosure upon a mortgage executed by Wells S. Rice upon the E. ½ of the N. W. ¼, and 25 acres off the N. side of the N. E. ¼ of section 34, township 83, range 18. The plaintiff was the owner and holder of the debt on which the judgment was rendered, and of the mortgage securing it. The claim had been indorsed to the bank for collection, and plaintiff's attorney, supposing the bank owned the note and mortgage, commenced suit in the name of the bank.

The premises above named were sold under special execution, subject to redemption, May 2, 1874, to George Glick, for

$1,451.59. Glick assigned the certificate of purchase to plaintiff. On the 11th of May, 1875, a sheriff's deed was executed to plaintiff.

On the 11th of August, 1873, W. S. Rice executed to the National Savings Bank of Concord, New Hampshire, a mortgage on the above named premises, to secure his note for $1,500, on which the defendant, Hambel, was liable as a surety. On the first Monday in October, 1871, the E. ½ of N. W. ¼ of said premises was sold to H. S. Patrick for delinquent taxes, and on the 7th day of October, 1874, a treasurer's deed was duly executed to him therefor.

Wells S. Rice negotiated with H. S. Patrick for a purchase of the property conveyed by the tax deed, and on the 6th day of March, 1875, for the consideration of $200, he procured to be executed to his son, S. T. Rice, a quit-claim from H. S. Patrick therefor.

On the 28th day of April, 1875, the National Savings Bank of Concord recovered judgment against W. S. Rice and J. W. Hambel for the sum of $1,768.65, on the note executed to it, and a foreclosure of the mortgage executed upon said premises to secure the same. On the 25th day of June, 1875, S. T. Rice, for the expressed consideration of $1,500, quit-claimed said premises to J. W. Hambel, and on the same day, for the same expressed consideration, W. S. Rice executed a quit-claim deed of said premises to Hambel. The real consideration of these conveyances was to secure Hambel for his liability as a surety on the $1,500 note. Afterward Hambel paid off the judgment recovered by the National Savings Bank of Concord, and, by his consent, Rice was released from the payment of said judgment, it being, however, understood that the land held as security was not released. At the time these quit-claim deeds were executed to Hambel, W. S. Rice was insolvent. The evidence very clearly establishes that the entire negotiation for the purchase of the tax title from Patrick was conducted by Wells S. Rice, and the money was advanced by him. S. T. Rice did not know of the conveyance until after it was executed. So far, then, as the rights of creditors are concerned, S. T. Rice must be treated as a mere trustee of

the title. The evidence, we think, would require us to hold that Hambel had knowledge of the real nature of the conveyance from Patrick to S. T. Rice. But whether he had or not is immaterial, for the conveyance from S. T. Rice is a mere quit-claim, and simply subrogates Hambel to the rights of S. T. Rice. See *Watson v. Phelps*, 40 Iowa, 482; *Smith v. Dunton*, 42 Iowa, 50.

The only question in the case, therefore, is whether Wells S. Rice, if he had taken the conveyance from Patrick to himself, would have acquired a title which he could set up against the plaintiff. As between W. S. Rice, the mortgagor, and plaintiff, the mortgagee, the primary duty of paying this tax rested upon the mortgagor. He remained in possession of the property, and it was his duty to keep the taxes paid. So long as the relation of mortgagor and mortgagee continued, this obligation rested upon the mortgagor. It is true the mortgagee might have paid the taxes for the preservation of his security; but if he had done so his claim against the mortgagor would have been, to the extent of the payment, increased. The duty of paying the taxes thus resting upon the mortgagor, he could not set up a title having its origin in a failure to perform this duty, as against the mortgagee. See *Porter v. Lafferty*, 33 Iowa, 254.

1. TAX SALE: mortgagor must pay taxes.

But it is claimed that the relations of these parties are entirely changed by the fact that the lands had been sold for taxes when the sheriff's sale under which plaintiff claims was made. The tax sale was made in October, 1871, and the treasurer's deed was executed in October, 1874. The sheriff's sale was made subject to redemption on the 2d day of May, 1874. Plaintiff was not entitled to a sheriff's deed until the 2d day of May, 1875. The mortgagor still retained the right to possession, and the right to redeem from the sheriff's sale, and this right continued until six months after the treasurer's deed was made, and for nearly two months after the Patrick deed was executed. During all this time the primary obligation of paying these taxes rested on W. S. Rice. If plaintiff had redeemed for the purpose of preserving his security, Rice might have redeemed from plain-

2. ——: redemption.

tiff at any time before he was entitled to a sheriff's deed, by paying the original debt, with the taxes added. When, therefore, the property was purchased at the sheriff's sale, plaintiff had a right to suppose that Rice would remove the incumbrance growing out of unpaid taxes, as it was his duty to do. The purchasing in of the outstanding tax title from Patrick by Rice, whilst his right to redeem from the sheriff's sale existed, should be regarded in equity as a mere discharge of his obligation to redeem from the tax sale. We feel quite well satisfied that he ought not to be permitted to set up the title thus acquired in opposition to the title acquired by plaintiff through the foreclosure of his mortgage, and the purchase at the sheriff's sale thereunder. The decree of the court below is

AFFIRMED.