## ADAMS v. BEALE *et ux.*

### I. PER CURIAM.

1. **Evidence**: PAYMENT OF TAXES. The payment of taxes may be proved by oral evidence, as well by the receipt or books of the collector. Section 75, chapter 152, Laws Seventh General Assembly, is not inconsistent with this rule.

2. ——— DEED CONCLUSIVE. Whether a legislative declaration in advance that an instrument *false* in fact shall be conclusive evidence of its *truth*, would be consistent with the provision of the bill of rights which declares that "no person shall be deprived of his life, *liberty* or *property* without due process of law," *query?*

### II. PER COLE, J., LOWE and DILLON, JJ., concurring, WRIGHT, Ch. J., dissenting.

3. **Taxation:** REDEMPTION: HOMESTEAD: The interest of the wife in the homestead is "the real property of a married woman," within the meaning of section 779 of the Revision of 1860, which permitted the redemption of such property from a sale made for the payment of delinquent taxes at any time within one year after the disability of coverture was removed.

   *Argu.* 1. HOMESTEAD: CHARACTER OF HOMESTEAD TITLE. The husband and wife are practically, as to the homestead property, joint tenants, subject to limitations. The interest of the wife is present and fixed and not remote or contingent.

   2. TAX SALE: CONSTRUCTION. The term "owner" and "parties in interest" in redemption laws have a broad and comprehensive meaning.

   3. ——— "OWNER:" REDEMPTION. Any right which in law or in equity amounts to an ownership in the land; any right of entry upon it, to its possession or enjoyment of any part of it, which can be deemed an estate, makes the person an owner so far as it is necessary to give him the right to redeem.

### III. PER CURIAM.

4. **Tax sale:** TIME OF REDEMPTION: CONSTITUTIONAL LAW. Would not a statute reducing or entirely abrogating the time for redemption from sales already made for the payment of delinquent taxes impair the contract of sale as to the owner?

5. ——— REPEAL OF STATUTE. Section 13, chapter 173, Laws of 1862, repealing § 778 of the Revision of 1860, did not affect the right of the

wife to redeem her homestead sold before its enactment, at any time within one year after the removal of the disability of coverture.

*Appeal from Johnson District Court.*

MONDAY, JUNE 19.

THIS suit was commenced on the 30th day of April, 1863, by a petition in ordinary proceedings, to recover the possession of real property. The plaintiff claimed the possession of one hundred and twenty acres, and deduced his title through a foreclosure sale under a mortgage executed by defendant, Thomas Beale, in which his wife did not join, nor was she a party to the foreclosure proceedings. The defendants answered, controverting the plaintiff's right to recover.

At the January Term, 1864, by agreement of the parties, the plaintiff had judgment for the recovery of eighty acres particularly described of the one hundred and twenty claimed, but the remaining forty acres were situated in two of the government subdivisions of that quantity, and in a body of square form, and was claimed by the defendants as their homestead.

At the January Term, 1865, the plaintiff obtained leave to and filed a supplemental petition in which he set up that since the filing of his original petition, and on the 8th day of November, 1864, he received from the treasurer of Johnson county a tax deed for all the land claimed in his original petition, including the forty still in controversy. To this supplemental petition was annexed a copy of the tax deed, showing that the land was sold on the 6th day of November, 1861, for the delinquent taxes of 1858. That the sale was made and certificate of purchase issued to Daniel F. Stone, and by him assigned to John R. Van Fleet, who assigned the same to Robert Adams, the plaintiff and grantee in the deed.

To this supplemental petition the defendants answered: 1st. That the property was their homestead, and had been since 1851 (setting out the fact showing it such); that the mortgage, under the foreclosure of which plaintiff claims title by his original petition, was executed by Thomas Beale alone, and was therefore null and void; that Elizabeth Beale was not a party to the foreclosure proceedings, and plaintiff had knowledge of defendants' homestead rights, and all the facts at the time of his purchase. 2d. That defendants had no knowledge of the tax sale till the 17th day of November, 1864; that as soon as they heard of it, defendant, Elizabeth Beale, at once tendered to the proper officer the amount of taxes for which the land in controversy had been sold, together with penalty, interest and costs, and notified plaintiff thereof, and offered to pay him, which he refused, and the said money was now in court, in the hands of the clerk, for the plaintiff, and subject to the order of court. 3d. That the tax sale was irregular, in that the eighty acres were sold together, instead of the homestead by itself for the tax only due thereon; that the sale was made to D. F. Stone, to whom one John R. Van Fleet (who was purchaser at the mortgage foreclosure sale and plaintiff's grantor) paid the amount due, *as owner*, and took the certificate which he had delivered to plaintiff since this suit was brought; that said Elizabeth was a married woman in 1858, and ever since has been and still is.

The answer is in equity and is made a cross-petition, and the sheriff's deed under the foreclosure sale is asked to be set aside, as also the tax deed, and the defendant Elizabeth allowed to redeem, &c.

The plaintiff abandoned all claim under the foreclosure sale, and there was a trial to the court, on the tax deed, which resulted in a judgment for plaintiff. Defendants appeal.

*Edmonds & Ransom* for the appellants.

*Fairall & Boal* and *Theo. M. Davis* for the appellee.

COLE, J. — The pleadings are quite voluminous and present questions upon demurrer, motion to strike, and effect of amendment after demurrer, &c., which become immaterial for us to determine, and it is therefore unnecessary for us to incumber the record with them.

1. EVI-
DENCE:
payment of
taxes.

I. After the defendants had answered the supplemental petition, they obtained leave and filed an amended answer, in which they set up that defendant, Thomas Beale, paid the taxes for 1858. On the trial, after the plaintiff had rested his case, the defendant, Thomas, was introduced and sworn as a witness, and by whom the defendants offered to prove that in January, 1859, he paid the taxes for 1858, upon the land included in the tax deed. The plaintiff objected on the ground that such fact could only be shown by a written receipt, signed by the treasurer; the court sustained the objection and the defendants excepted. The defendants then offered to prove by said witness, the loss of the tax receipt; and that at the time he took the receipt, no duplicate was handed to him to take to the county judge. The defendants then offered to prove by the person who was county judge at the time, and by four or five others, and among them the deputy treasurer, that it was not customary in that county, in 1858 or 1859, to take or leave duplicate tax receipts with the county judge, and that frequently no record was made of the payment of taxes; and also by the present county judge that there were but few duplicate tax receipts among the papers of his office, and none to the defendant, Thomas Beale. To all this the plaintiff objected as insufficient to lay the foundation for Thomas Beale to testify as to the payment of the tax or the contents of the receipt; which objection the

court sustained, and defendants excepted, and now assign such rulings as error.

These objections and rulings were founded upon section 86, chapter 152 of Laws of Seventh General Assembly, p. 337, which required tax payers to take duplicate receipts, leave one with the county judge, and take his signature and indorsement of "duplicate surrendered" on the other, and then provided that "no receipt for taxes shall be held as evidence of the payment thereof without such signature of the county judge."

This statute may well be held to accomplish all its language imports, or which may be reasonably construed as its purpose, and yet fall far short of sustaining the rulings sought to be founded upon it. The receipt, either with or without the statute, is no more primary evidence of the fact of payment than a living competent witness to the same fact. If a party was compelled to rely upon the receipt as his evidence of the payment, then the statute might defeat that reliance unless its provisions had been complied with; this of course upon the theory that the statute was still in force or properly applicable to the case.

But a statute which prohibits the introduction of one class of evidence, cannot properly be construed to exclude another class not mentioned, simply because such other class is co-equal with it.

Mr. Blackwell in his work on Tax Titles, p. 489 (of first ed. and 417 of second ed.), says: "The payment of the tax being matter *in pais*, may be proved by oral evidence, it is not necessary to introduce the collector's books or his receipt, or produce the assessment roll, but the collector or other officer to whom the payment was made, the agent of the owner, or any person present at the time of payment, are competent witnesses to prove the fact." See also, 2 Greenl. on Ev., § 569, and cases cited; *Dennett* v. *Crocker*, 8 Greenl., 239.

By the statute under which this sale for taxes was made, it is provided (Rev., § 784) that the tax deed shall be prima facie evidence only, of the payment of the tax, while it is made *conclusive* evidence that the property was listed, assessed, levied, advertised, sold, &c., as required by law. It has been held that it is competent for the legislature to declare that a tax deed shall be *prima facie* evidence of the regularity of prior proceedings. *Allen* v. *Armstrong,* 16 Iowa, 308, and authorities cited. This presumption may be contradicted by other testimony. But whether the legislature may declare in advance that an instrument *false* in fact, shall be conclusive evidence of its *truth,* has not yet been determined, certainly not by this court. How far, if at all, such legislative action may be in violation of our Bill of Rights, which declares that "No person shall be deprived of his *life, liberty* or *property* without due process of law," it is not necessary in this case to decide. Suppose, however, the legislature should declare that an indictment duly found by a grand jury, should be conclusive evidence of the guilt of the accused, would this deprive him of "his liberty without due process of law?" If so, where is the line at which the legislative power begins, and where does it end?

*2. —— deed conclusive. [query.]*

II. Upon the trial of the cause, the defendants offered to prove that on the 17th day of December, 1864 (which was after the tax deed was made), the defendants first learned of the tax sale, and thereupon Elizabeth Beale at once duly tendered the amount necessary to redeem from the tax sale, if she had the right to redeem. The plaintiff objected to this evidence on the ground that it was immaterial. The court sustained the objection, and excluded the evidence. This ruling is now assigned as error.

*3. TAXA- TION: re- demption: homestead.*

The statute (Revision, § 779) provides that real property sold for taxes may be redeemed before the expiration of

three years, by paying "the amount for which the same was sold, and thirty per cent on the same, with ten per cent per annum interest on the whole amount from the day of sale," and the subsequent taxes paid, with ten per cent thereon, &c. (see now Acts of Ninth General Assembly, chap. 173, § 13, p. 226); and then follows this proviso: "*Provided*, that if real property of any minor, married woman or lunatic, be sold for taxes, the same may be redeemed at any time within one year after such disability be removed, upon the terms specified in this section."

The question presented in this case, is whether the interest of the wife in the homestead is such as that it can be properly regarded the "real property of a married woman" within the meaning of the above quoted redemption clause of our statute.

The Revision of 1860 (which in this respect is like the Code of 1851), under the heading of "Construction of statute," sec. 29 of subdivision 8 provides that "the word 'land' and the phrases 'real estate' and 'real property' include lands, tenements and hereditaments and all rights thereto, and interest therein, equitable as well as legal."

The right of the wife to the homestead of the husband, and her interest in it, are present, fixed and substantial: *Argu.* 1. they are not merely possible, remote or contin-HOME-STEAD: gent. Her rights and interests are in possession character of right. and enjoyment, and not merely in expectancy or dependent. The husband and wife are, as to the homestead practically, joint tenants, subject to certain limitation for the benefit of children, &c. The husband cannot alienate the homestead nor even his own interest in it, except the wife concur in signing the conveyance. Can it be said then that she has no "interest in" that, the present possession of which she enjoys, the title to which cannot be imparted without her consent, and the alienation

of which can only be done by her joining in the conveyance.

The nature of a wife's interest in the homestead is such, as the decision shows (see 1st Am. Law Reg. N. S., 709), that it is not in general liable to be affected or concluded by the omission, neglect or default of the husband. *Sargent* v. *Wilson*, 5 Cal., 504; *Revalk* v. *Kramer*, 8 Id., 66; *Tadlock* v. *Eicles*, 25 Texas, 782; *Marks* v. *March*, 9 Cal., 90.

Whatever doubt may possibly have existed as to the meaning of the phrase "real property," as understood at the common law, is certainly made very clear by our statute defining its meaning, as quoted above.

But aside from the statutory definition, the rule of construction, which obtains in redemption cases, gives to *Argu. 2.* the word "owner," and phrase "party in inter-
**TAX SALE:**
*construc-* est," quite as broad and comprehensive a meaning
*tion.*
as the statute quoted *supra*. In construing the redemption laws, the word "owner" is held to be a generic term, which embraces the different species of interest which may be carved out of a fee simple estate. Blackwell on Tax Titles, 1st ed., 495 (2d ed., 423); *Byington* v. *Rider*, 9 Iowa, 566. Where land has been mortgaged to secure a debt, and judgment creditors have liens upon it, and the land is in possession of a stranger to the title, whose possession is ripening into a right, each is an "owner" according to the extent of his interest or claim, and each has a right to protect his interest by a redemption from a tax sale. Blackwell on Tax Titles, 496 (2d ed., 423).

Any right which in law or equity amounts to an ownership in the land; any right of entry upon it, to its possession *Argu. 3.—* or engagement, or any part of it which may be
*"Owner:"*
*redemption.* deemed an estate, makes the person an owner as far as it is necessary to give him the right to redeem. *Dubois* v. *Hepburn*, 10 Peters, 1; see also *Byington* v. *Book-*

*walter*, 7 Iowa, 512; *Masterson* v. *Bearsly*, 3 Ohio, 301; *Burton* v. *Hintrager*, 18 Iowa, 348. In view of our statutes defining the meaning of the phrase "real property," and of the great liberality of construction given to redemption clauses of revenue acts, a majority of the court are agreed in holding that under our homestead laws the wife of a "head of a family" has the right to redeem the homestead from a tax sale.

And it has been held by this court, that where a person has the right to redeem within the time given by the general clause of the statute, such person may, if within either of the classes of persons, to whom, by a proviso or otherwise, greater time is given, redeem within such additional time. *Burton* v. *Hintrager*, *supra.*

III. By an act of the ninth General Assembly, chap. 178, sec. 13 (vide Laws of 1862, p. 226) sec. 779,

4. TAX SALE: time of redemption.

quoted *supra*, was repealed; and there was enacted in lieu thereof a section similar in its general features, but with *proviso* extending the right of redemption beyond three years, and to one year after removal of disability to infants and lunatics *only*. And hence the question arises in this case, whether such repeal of the law, giving to *married women* the right of redemption after three years, &c., has cut off the right to redeem, which accrued by the statute under which the sale was made.

It is not necessary for the determination of this case to discuss the question upon principle, as to the effect of a repeal of a statute, upon rights or privileges which had accrued under it, nor is it necessary directly to decide whether the repealing act was intended to have a prospective effect only. Whether the act is so far unconstitutional, if, by its terms, it is retroactive, is also immaterial under our statute. It has, however, been held that where the period allowed for redemption by the law under which the sale was made was three years, and before that time

expired after the sale, an act was passed extending the time for redemption to four years; that such act was unconstitutional, for that it impaired the obligation of the contract of sale. *Downing* v. *Shoenberger,* 9 Watts, 298. If the extension of the time for redemption impairs the obligation of the contract of sale as to the purchaser, it may well be inquired whether the reduction of that time or abrogating it entirely will not impair the obligation of the contract of sale as to the owner?

By our statute, Revision, sec. 29, sub-div. 1, it is provided that " the repeal of a statute does not revive a statute previously repealed; nor does such repeal *affect any right which accrued,* any duty imposed, any penalty incurred, nor any proceeding commenced, under or by virtue of the statute repealed." Under this provision if not otherwise, the right of the wife to redeem, having accrued under the law by virtue of which the sale was made, is preserved to her, although such law may have been repealed.

5. —— repeal of statute.

There are many other questions in this case, made by counsel in their argument; but since the wife has the right to redeem, which it is not here controverted, she has done; and since this question legitimately arises upon the record, and has been fully argued by counsel, and is decisive of the case, it becomes unnecessary to decide any further supposed points made. The judgment is

Reversed.

WRIGHT, Ch. J., dissenting as to the second division of the opinion.