### In re RAFFERTY et al.

(District Court, N. D. Iowa, E. D.   December 26, 1901.)

HOMESTEAD—IOWA STATUTE—WHAT CONSTITUTES FAMILY.

Under Code Iowa, § 2972, providing that "the homestead of every family, whether owned by the husband or wife, is exempt from judicial sale," it is not essential to the exemption that there should be one who is the head of the family, or members who are dependent; and upon

the death of a father and mother, so long as their children, or any number of them, continue to reside in the homestead property as members of the same family, the homestead character continues, or a new family is created, which is entitled to homestead rights in the property; and in either case it cannot be sold to satisfy the debts of any of the heirs contracted after the decease of their parents, whether such heirs are members of the family or not.

In Bankruptcy. On certificate of referee on questions of homestead exemption.

O'Donnell & Lattner, for bankrupts.

Henderson, Hurd, Lenehan & Kiesel, for trustee.

SHIRAS, District Judge. The question presented by the certificate of the referee in this case is whether the trustee can rightfully sell, as part of the assets of the estate, the interest held by the bankrupts in outlots 578A and 579A in Dubuque, Iowa, or whether the premises are exempt to the bankrupts under the homestead laws of Iowa. The evidence shows that the property was acquired years ago by the father and mother of the Rafferty sisters, and was occupied by the family as their home. The mother died some 13 years ago, and the father about a year after, leaving a family of nine children,—two sons and seven daughters. The two sons and a married daughter made no claim to the home property, leaving that in the possession of the daughters, who continued to occupy the premises as a home. When the petition in bankruptcy was filed, and at the present time, the occupants of the premises were and are Susie D., Florence, and Genevieve Rafferty; four of the sisters being married, and living elsewhere. The three sisters just named are all of full legal age, and have lived where they now do during their entire lifetime. Some time since, two of the daughters—Mary E. Rafferty, now Mrs. McCann, and Susie D. Rafferty—engaged in the millinery business under the firm name of Rafferty Sisters, but the enterprise not proving a success financially, they were adjudged bankrupts in this court, and their estate is now in process of settlement. The trustee applied to the referee for an order directing him to sell the interest of the bankrupts in the premises, and the bankrupts interposed their claim to the property as exempt. Upon the hearing the referee held that the premises could not be deemed to be a homestead, nor could the three sisters now living therein be held to be a family within the meaning of that term as used in the homestead law of the state, and therefore the premises were not exempt from liability for the debts of the several owners thereof, and the question now presented for consideration is whether this conclusion is a correct construction of the statute of Iowa. Section 2972 of the Code of Iowa declares that "the homestead of every family, whether owned by the husband or wife, is exempt from judicial sale, where there is no special declaration of statute to the contrary." In some of the states the statutory provision is that the homestead of the head of the family is exempt, and it has been held under these statutes that, to come within the exemption, there must be one who stands in the actual control of the household, as the head thereof, and being under a legal or moral obligation to support the other

112 F.—33

members of the household. This is not the provision of the Iowa statute, the declaration therein being that the homestead of every family is exempt; and it is clear that the purpose of the statute is to extend its benefits to the family as a whole, and this beneficient purpose should not be defeated by holding that when the parents, who are recognized as the heads of the family, pass away, the protection of the statute is withdrawn from the family, which continues to exist, though bereft of its natural heads. Having regard to the object sought to be attained by the homestead exemption law, it would seem that, to hold that the death of the parents terminates the family relation, and subjects the common home to liability for the debts of one or more of the heirs at law, would be a denial of one of the most important purposes sought to be attained by the statute in question. The exemption of the family home from judicial sale has regard, not only to the interests of the individual citizens, but is founded also upon sound public policy, which recognizes the benefit derived by the community at large from the ownership by every family of a common and permanent home. The state, by its legislation, wisely encourages the acquisition of homes by its people; and there is no greater incentive to that end than the knowledge the parent has that, if he is taken away, his children, so long as they continue members of the family, cannot be deprived of the protection of the home acquired through years of labor and saving on part of the parents, and in many cases aided by the earnings of the entire family. In this view of the Iowa statute, it cannot be held that, where the character of a homestead has once been fairly and properly impressed upon the premises occupied by a given family, the family relation is terminated, and the homestead character of the property is destroyed, simply because one or more of the members of the family are called away by death, leaving the family circle, though diminished in numbers, still in existence, and still carrying on the family life under the same roof tree.

The distinction existing between statutes conferring exemptions on heads of families and those conferring exemptions on the family is clearly defined by the supreme court of Iowa in Reeseman v. Davenport, 96 Iowa, 330, 65 N. W. 301, wherein it was held that the rule recognized in Van Doran v. Marden, 48 Iowa, 186, and other like cases, to the effect that exemptions of personal property from judicial sale, provided for in the Code of Iowa, in favor of heads of families, ceased to exist in favor of a woman upon her marriage, as she then ceased to be the head of a family, did not apply to the statute creating the homestead exemption, because that exemption was to the family, and it was therein held that the homestead right held by Mrs. Reeseman prior to her marriage was not terminated by the fact of her marriage. In Parsons v. Livingston, 11 Iowa, 104, 77 Am. Dec. 135, it was held that property acquired by a widower without children, but which he occupied with his mother, was exempt from debts created after the occupancy of the premises by the mother and son; it being also therein said:

"This act of the legislature in giving to each citizen of the state a homestead is based upon the idea that it is a matter of public policy, for the pro-

motion of the prosperity of the state and the general good of the people, that each citizen should be independent and above want; that he should have a home,—a place where he and his family may live in society beyond the reach of financial misfortune and the demands of creditors."

In Arnold v. Waltz, 53 Iowa, 706, 6 N. W. 40, 36 Am. Rep. 248, it was held that the homestead exemption extended to a case wherein an unmarried woman protected and provided for the children of a deceased sister. In Tyson v. Reynolds, 52 Iowa, 431, 3 N. W. 469, was presented a case touching the exemption of personal property under section 3072 of the Code of Iowa of 1873, which declared that every head of a family being a resident of the state is entitled to hold exempt from execution certain named property. It was held that the debtor, who was a widower, with whom his son and his son's wife continued to reside without paying board, must be deemed to be the head of a family within the meaning of the statute, and entitled to the exemption claimed. It was expressly said therein that "the relation existing between such persons must be of a permanent and domestic character, not abiding together temporarily as strangers. There need not, of necessity, be dependence or obligation growing out of the relation." If it be true, as held in the case cited, that, to make one a head of a family, within the meaning of the exemption statutes, it is not necessary that any member of the family should be dependent upon the head of the family for support, then certainly it must be true that the family relation or condition, as that term is used in the homestead statutes, is not dependent upon the question whether any one of the family owes the obligation of support to the others, or that there shall exist a condition of legal dependency on part of some of its members upon any one or more of the others. The existence of a family is conditioned upon the fact that there is gathered together in one homestead that domestic entity which the community recognizes as a family, bound together by the ties of blood or affinity, or through the operation of circumstances which, in the particular case, bring about the same results which usually spring from the tie of relationship. When, therefore, a number of persons are living together in that domestic relation which is commonly and properly designated as that of a family, such an entity may acquire and maintain a common home, which, under the provisions of the Code of Iowa, will be exempt from liability for debts due from any one or all of the individuals composing the family, created after the occupancy of the homestead. Under these circumstances, so long as the family exists and continues to occupy the common home, its homestead character cannot be destroyed by the action of creditors whose claims did not come into existence until after the homestead had been acquired. It may be abandoned as a place of residence by the family, or the family may be broken up by the action of its members, and thus the premises may cease to be the homestead; but, after the homestead character has been conferred upon the premises, it will continue to exist until abandonment by the family has taken place, or until the family itself becomes extinct, either through the death of its members or through their action resulting in the dispersion thereof. In the case now

under consideration the homestead character was given to the premises in question originally by the occupancy thereof by the parents and children of the Rafferty family. Upon the death of the parents the title passed to the children, but the family relation among the remaining occupants was not in fact dissolved. It may be true that, technically speaking, a new family then came into existence, composed of the children remaining in the home; but at that time none of the debts now represented by the trustee were in existence. The point for decision is whether, by continuing to reside together as one family, the children remaining at home did not create or continue a family, and as such did they not become entitled to hold the premises as the family home. The evidence shows that the one married daughter and the sons yielded up any claim they had to this realty, the purpose being to keep these premises as a home for the children, who were then of an age specially requiring a home for their protection. These premises never have been abandoned as a home by the family, nor has the family been dispersed through the action of its members. By marriage some of the sisters have gone to other places of residence, but the family still continues to exist in the persons of the three sisters whose home has been on the premises, practically, if not literally, for their entire lifetime. Upon what theory can it be held that the creditors of the bankrupts can now insist upon breaking up the home wherein Genevieve and Florence Rafferty have always lived? These sisters are not bankrupts, nor are they indebted in any sums to the creditors represented by the trustee in this case. It is no answer to the query for it to be said that, if the premises are sold, the proportionate share coming to Genevieve and Florence will be paid them in money. What they are entitled to under the law is the right to occupy the premises as a home, and the deprivation of the common home is not made good to them by giving them their shares in what may be realized from the property at a forced sale. The home intended to be secured to the family by the homestead exemption law of Iowa is something far beyond the mere money value that the premises can be sold for at public sale. The exemption of the homestead is the recognition of the value of a home, not in money, but in all the influences that emanate therefrom; and on the ground of public policy alone it is the duty of the courts to prevent the defeat of the beneficent purposes of the statute through a narrow construction of its provisions. If it be held that Mrs. McCann, through her marriage and her removal to another place of residence, may have given some foundation for the claim that she has abandoned the common home, yet that is not true of the other bankrupt sister, who still continues to reside in the common home. Her homestead rights in the premises came into existence long before any of the debts now due from her came into existence, and, as she has never abandoned or terminated her rights in the homestead, she is entitled to claim the same as exempt. The fact that Mrs. McCann, upon her marriage, ceased to live in the common home, does not defeat the rights of the family who still occupy the premises as a family to hold the same exempt from judicial sale. At the time of her marriage Mrs.

McCann's interest in the property could not be sold for her debts. Her creditors, if she had any, could not sell the homestead on the ground that she had some interest therein without destroying the family homestead, which it is the purpose of the statute to protect. It is clear that the interest in common which Mrs. McCann held in the homestead premises was not subject to be sold for the debts now represented by the trustee up to the moment she ceased to reside in the common home, for the reason that the premises were exempt to the family as a home; and I can see no good ground for holding either that the homestead was abandoned by the family or that the family was broken up and dispersed by the fact that one member thereof had ceased to live in the common home. The question really presented for consideration is not as to the homestead rights of Mrs. McCann, but as to the homestead rights of the family, who for years have occupied the premises as their home, and still continue so to do in the persons of the sisters Susie, Genevieve, and Florence; and, as already said, I can see no reason why their home should be broken up for the benefit of the creditors whose debts were not created in the belief that the homestead formed part of the assets of the bankrupt firm.

The exceptions to the ruling of the referee must therefore be sustained, and the record be returned, with instructions to refuse the petition of the trustee asking authority to sell the interests of the bankrupts in the family homestead.