## In re MAXSON.

### (District Court, N. D. Iowa, E. D.   May 22, 1909.)

### No. 603.

1. BANKRUPTCY (§ 399*) — HOMESTEAD EXEMPTION — FAILURE TO CLAIM IN SCHEDULE—AMENDMENT OF SCHEDULE.

   The failure of a bankrupt through oversight to make a claim to a homestead exemption in his schedule does not deprive him of the exemption allowed to himself and his family by the laws of the state, where timely application is otherwise made to the court of bankruptcy therefor, and such application, although not such in form, may properly be treated as an amendment of the schedule.

   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 669; Dec. Dig. § 399.*]

2. BANKRUPTCY (§ 399*) — HOMESTEAD EXEMPTION — RIGHT OF HUSBAND OR WIFE OF BANKRUPT TO CLAIM—IOWA STATUTE.

   Under Code Iowa 1897, § 2972, which provides that "the homestead of every family, whether owned by the husband or wife, is exempt from judicial sale," and section 2974, providing that no conveyance of the homestead shall be valid unless both husband and wife join therein, that a husband or wife who holds the title to the property occupied by the family as a homestead is adjudged a bankrupt does not deprive the other of the right to have the homestead set apart, even if not claimed by the bankrupt, and he or she may intervene in the bankruptcy proceedings for that purpose.

   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 669; Dec. Dig. § 399.*]

In Bankruptcy. On review of decision of referee.

On petitions of the bankrupt and her husband, Larnard Maxson, for review of the orders of the referee denying their claims to a homestead exemption in real estate scheduled by the bankrupt, Ethel Maxson, and of the trustee for review of an order denying his application to have the homestead of the bankrupt adjudged liable for the debts scheduled by her.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

E. E. Hasner, for the bankrupt and her husband.
Cook & Cook, for the trustee.

REED, District Judge.    March 26, 1908, Ethel Maxson was adjudged bankrupt by this court on her own petition.    In her schedule of assets she listed 120 acres of land in Buchanan county, this state, as held by her under a contract of purchase thereof, and for which she would be entitled to a deed upon payment of $5,615 and interest as provided in the contract of purchase.    She scheduled no other property and made no claim for any exemption, and in Schedule "B (5)" the word "None" is written.

May 5, 1908, she filed with the referee a paper duly verified by her, in which she states:

"That she scheduled as an asset a certain contract or bond for a deed made by C. W. Van Orsdol, with said bankrupt, of the following described property (describing the 120 acres of land above referred to).

"That she is in possession of said land, and is a married woman, and the head of family, and she has been in possession of said land as the head of a family ever since the contract was made with said C. W. Van Orsdol, and that, before she became the owner of said property by virtue of said contract, it was the property and the home of Larnard Maxson, her husband, and had been such for a good many years.

"Wherefore she prays that her homestead interest in and to said premises be set off to her so as to include the ordinary dwelling house and outbuildings pertaining to said homestead tract, and that the trustee be compelled to exhaust her interest in and to the other property described in said contract after the homestead shall have been set apart to her, and she prays the court to fully protect all her rights in the premises."

October 24, 1908, the trustee not having set apart the homestead claimed by the bankrupt, and the referee not having acted upon her application of May 5th, Larnard Maxson, husband of the bankrupt, filed with the referee a petition as follows:

"Comes now Larnard Maxson and states to the court that prior to the 2d day of November, 1907, he was the owner in fee simple of the (describing the land scheduled by the bankrupt).    That on said date last mentioned he conveyed the same to C. W. Van Orsdol.    That on the same date, November 2, 1907, C. W. Van Orsdol executed and delivered to his wife, Ethel Maxson, a bond for a deed for said premises, conditioned that he would convey the same to the said Ethel Maxson upon her paying to him the sum set forth in said bond.    That for a number of years prior to his conveying the same to the said C. W. Van Orsdol, he was a married man, the head of a family, and was living upon the premises described herein, with his family, and occupying it as a homestead.    That the family never removed from said premises, and are still living on said premises.    That as husband of said Ethel Maxson he claims a homestead interest in said premises, and a homestead right in her equitable title to said premises which she acquired by virtue of the bond for a deed from said C. W. Van Orsdol.    That he prays the court that in the further progress of these proceedings that his homestead rights be fully protected, and so set off under the laws of the state of Iowa as not to render them liable for any debts of his own or those of his wife."

On the same day (October 24th) the bankrupt and her husband, Larnard Maxson, appeared before the referee by attorney and asked that a time be fixed for the hearing of their application to have the homestead set apart to them from the realty scheduled by the bankrupt, and to prescribe the notice that should be given thereof.    A day was ac-

cordingly fixed by the referee and notice thereof given to the trustee, who appeared and filed written objections to the applications of the bankrupt and her husband upon the grounds: First. That the debts scheduled by the bankrupt as owing by her were all contracted prior to the date of the contract under which she claimed to own the land, and that neither she nor her husband is entitled under the Iowa statute to a homestead exemption in such lands as against such debts. Second. That the bankrupt in the schedules attached to her petition made no claim for exemptions, but stated that she claimed none. Third. That the bankrupt was granted a discharge in September, 1908. He also asked the referee to enter an order that the homestead rights of the bankrupt be subject to the debts scheduled by her. The referee, upon a hearing, denied the applications of the bankrupt and her husband, and the request of the trustee, and each severally petitions for a review of such orders.

Upon the hearing before the referee it was made to appear that on and prior to November 2, 1907, Larnard Maxson was a resident of Iowa, the head of a family, and the owner of 120 acres of land scheduled by the bankrupt, upon which he and the bankrupt with their family had lived for many years, 40 acres thereof being their homestead and exempt to them as such under the statute of Iowa. At that time the land was incumbered for some $5,500, and on that date they, Larnard Maxson and his wife, the bankrupt, made a warranty deed of said 120 acres to C. W. Van Orsdol, who in consideration thereof assumed and agreed to pay the incumbrances thereon and discharge some small debts owing to him by Larnard Maxson, in all amounting to $5,615, and on the same date, and as a part of the same transaction, Van Orsdol made and delivered to the bankrupt a written contract whereby he agrees to convey said land to her upon payment of said $5,615 and interest thereon at 6 per cent., upon terms stated in the contract, the bankrupt to have the use and possession of the property thereafter. No money or other consideration was paid by Van Orsdol for the land, and none was paid or promised to be paid to him by the bankrupt therefor other than the agreements made by her in said contract. The bankrupt and her husband continued to live upon the land thereafter, and to occupy the homestead the same as they had done for many years before. This transaction was in effect but a mortgage of the land to secure Van Orsdol for the amount that he should pay upon the incumbrances upon the land and the indebtedness owing him by Larnard Maxson. It also satisfactorily appeared that the failure of the bankrupt to claim a homestead exemption in the schedules attached to the petition was an oversight on the part of the attorney in preparing them, and, as soon as this was discovered, the paper of May 5th was prepared and filed with the referee for the purpose of correcting such oversight and to claim the homestead exemption. It does not appear that the trustee or any creditor of the bankrupt has been prejudiced, or that either has in any respect changed his position because of the failure to sooner claim the exemption, unless the discharge granted to her can be said to work such prejudice.

The single question for determination, therefore, is, Does the failure

of the bankrupt to claim the exemption in her petition in bankruptcy, or the writing of the word "None" in Schedule "B (5)," deprive her or her husband of the homestead exemption accorded to them and their family by the Iowa statute? The referee held that because the bankrupt had failed to claim the homestead exemption in the schedules filed by her, and did not formerly apply for leave to amend the schedule and claim the same therein, she thereby waived her right to the exemption. It is true that section 7 of the bankruptcy act of July 1, 1898, c. 541, 30 Stat. 548 (U. S. Comp. St. 1901, p. 3425), requires a bankrupt to make and file a schedule of his property and to claim therein such exemption as he may be entitled to. But it cannot be that a failure, through oversight in preparing the schedules, to therein make such claim, will deprive the bankrupt of the exemption allowed by the law of the state, when timely application is otherwise made to the court of bankruptcy therefor. Bankruptcy proceedings are proceedings in equity, and the estate of the bankrupt is to be awarded by the court of bankruptcy administering it upon equitable principles to those who may be justly entitled thereto. The manner in which the claim for exemption shall be made is a mere matter of procedure, and, as in other cases, amendments may be allowed to effect justice between the parties and accomplish the purpose of the proceedings. Section 954 of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 696) is sufficiently broad to permit of such amendments in all cases pending in any court of the United States. The paper filed by the bankrupt with the referee on May 5th is not labeled as an amendment to the bankrupt's petition or to any schedule thereof, but it is a specific claim for a homestead exemption in the real property scheduled by her as an asset in which she claims an equitable interest, and is in fact an amendment to her petition claiming a homestead exemption in such property under the Iowa statute. The nature of the paper should be determined from its contents rather than its name, even when it is given one. October 24th, the trustee not having set apart the exemption thus claimed, the bankrupt applied to the referee to fix a time for the hearing of her application therefor, which time was fixed by the referee, and to deny that application because it was not formally named as an amendment to the petition or the proper schedule thereof would be to sacrifice substance to mere matter of form. The filing of the paper with the referee was sufficient to apprise him and the trustee that the bankrupt claimed a homestead exemption in the property scheduled by her, and was in sufficient time to enable the trustee or any creditor of the bankrupt to interpose any objections that either might have, if any, to the discharge of the bankrupt because of making such claim.

But if it should be held that the bankrupt has thus waived her right to the homestead, does this prevent the husband, who was one of the family occupying the homestead with her, from claiming it? On October 24th he also filed with the referee a petition in which he set forth that he was the husband of the bankrupt, a resident of Iowa, and as such was entitled to a homestead under the laws of that state in the real estate scheduled by the bankrupt. This was in effect an

intervening petition by him claiming an interest in property in the custody of the court of bankruptcy, and is the proper method of making such claim. Krippendorf v. Hyde, 110 U. S. 276–281, 4 Sup. Ct. 27, 28 L. Ed. 145.

Section 6 of the bankruptcy act provides:

"This act shall not affect the allowance to bankrupts of the exemptions which are prescribed by the state laws in force at the time of the filing of the petition in the state wherein they have had their domicile for the six months or the greater portion thereof immediately preceding the filing of the petition."

The Code of Iowa 1897 provides:

"Sec. 2972. The homestead of every family, whether owned by the husband or wife, is exempt from judicial sale, where there is no special declaration of statute to the contrary."

"Sec. 2974. No conveyance or incumbrance of or contract to convey or incumber the homestead, if the owner is married is valid, unless the husband and wife join in the execution of the same joint instrument, whether the homestead is exclusively the subject of the contract or not, but such contracts may be enforced as to real estate other than the homestead at the option of the purchaser or incumbrancer."

"Sec. 2976. The homestead may be sold on execution for debts contracted prior to its acquisition, but in such case it shall not be sold except to supply any deficiency remaining after exhausting the other property of the debtor liable to execution. It may also be sold for debts created by written contract, executed by the persons having the power to convey, and expressly stipulating that it is liable therefor, but then only for a deficiency remaining after exhausting all other property pledged by the same contract for the payment of the debt."

Section 2972 is different from those statutes which allow an exemption to the head of a family only, and decisions under such statutes are not in point here. Reeseman v. Davenport, 96 Iowa, 330, 65 N. W. 301.

It is the public policy of the state of Iowa, as declared by its Legislature and decreed by its courts, that the homestead of every family, whether the legal title is held by the husband or wife, shall be beyond the stress of financial storms and the reach of creditors whose debts have been contracted subsequent to its acquisition; and any member of such family who continues to occupy the homestead as a home may assert his or her right thereto whenever it is sought to deprive him or her thereof by any form of judicial process or procedure. Parsons v. Livingston, 11 Iowa, 104, 77 Am. Dec. 135; Lunt v. Neeley, 67 Iowa, 97, 24 N. W. 739; Adams v. Beale, 19 Iowa, 61–68; Reeseman v. Davenport, 96 Iowa, 330, 65 N. W. 301; Foster v. Rice, 126 Iowa, 190, 101 N. W. 771; In re Rafferty (D. C.) 112 Fed. 512.

And the homestead right attaches to property, when occupied as a home, held under a contract for the purchase or lease thereof. Pelan v. De Bevard, 13 Iowa, 53; Stinson v. Richardson, 44 Iowa, 373; Lessell v. Goodman, 97 Iowa, 681, 66 N. W. 917, 59 Am. St. Rep. 432.

In the last-named case the plaintiff had entered into a written contract with Joseph Goodman to sell to him a city lot to be paid for in installments, under which contract Goodman took possession of the lot, erected a house thereon, and occupied the same with his family as their home. A short time prior to the maturity of the second pay-

ment Goodman abandoned his wife, and thereafter lived separate and apart from her, while she with her daughter continued to occupy the place as their home. The plaintiff declared the contract forfeited for failure to make the payments as provided therein, and Goodman in writing acknowledged such forfeiture to be valid and binding. The plaintiff thereupon sought to dispossess the wife and recover the property from her because of such forfeiture and the acknowledgment thereof by the husband, but it was held that the acknowledgment of the forfeiture by the husband and waiver by him of the homestead right was void, and that the wife was entitled to make the payments under the contract and receive a deed for the property.

In Re Rafferty (D. C.) 112 Fed. 512, Judge Shiras held that the children of the owners of a homestead continuing to occupy the same as their home after the death of the parents, who held the legal title, were entitled to hold the same as exempt from their own debts contracted after the death of the parents, and that upon the bankruptcy of such children the homestead so occupied by them should be set apart to them as exempt under the Iowa statute.

It seems clear, therefore, that under the Iowa statute, the homestead right of the husband or wife in property occupied by either as a home cannot be defeated by any act of the other in whose name the legal title may be held. If the bankrupt in this case, therefore, had declared in her petition that she expressly waived the right to the homestead in the property scheduled by her, and thereafter made no effort to have the property set apart to her as exempt, this would not defeat the right of the husband to have the homestead set apart to him, so long as he continued to occupy the same as such. If this be not so, then the spouse who happens to hold the legal title to the home may deprive the other, and other members of the family, thereof by proceedings in bankruptcy, and thus directly evade the provisions of the Iowa statute. Surely it was not intended that the bankruptcy act should have any such effect.

It is urged by the trustee that, though the wife may have a homestead right in this property, it is subject to debts contracted by her prior to its acquisition, and that the husband has no greater rights to the property than she has. But see Foster v. Rice, 126 Iowa, 190, 101 N. W. 771. While the homestead is exempt from debts generally, it may be liable for those contracted prior to its acquisition, or for those secured thereon by written contract executed as provided by the Iowa statute. But this does not destroy its character as a homestead nor defeat the general exemption thereof, and whether or not it may be subjected to certain specified debts will not be determined by the court of bankruptcy, for its jurisdiction over exempt property when it determines it to be such is to set it apart to the bankrupt, and, if it is liable for specific debts, the creditor to whom it is so liable must proceed to subject it to the payment thereof by proper proceedings in the state court. Lockwood v. Exchange Bank, 190 U. S. 294, 23 Sup. Ct. 751, 47 L. Ed. 1061.

If it is said that the discharge of the bankrupt will prevent the creditors from so proceeding in the state court, the answer is that

they should have made timely request of the court of bankruptcy to withhold the discharge for a reasonable time that they might do this; or, if the discharge was fraudulently procured, it might have been revoked in proper time. Section 15, Bankr. Act. But having taken no action in either direction, they are not in position to complain.

The conclusion, therefore, is, that the referee should have set apart to the bankrupt and her husband the property occupied by them as a homestead at the time the petition in bankruptcy was filed, and the matter is referred back to him with directions to do so. The order denying the request of the trustee is approved. It is ordered accordingly