STATE OF IOWA, Appellee, v. HARVE DEITRICK, Appellant.

**STATUTES:**   Penal Statutes—Construction—Census Act.   Statute language defining crime will not be extended beyond the clear import of the words used.   Therefore, statute authority in the Census Act to interrogate (a) as to the "ownership of farms," and (b) as to the "tenure" under which an occupant was holding lands, and providing punishment for those who ·refuse to make answer, authorizes no inquiries as to the *incumbrances* existing on such lands, and a refusal to make answer to such latter inquiries constitutes no offense.   (Sec. 171, Code Suppl. Supp., 1915.)

*Appeal from Clarke District Court.*—THOMAS L. MAXWELL, Judge.

TUESDAY, OCTOBER 17, 1916.

DEFENDANT was convicted of a misdemeanor, in that he refused to answer a certain question propounded to him by the census enumerator, touching incumbrance upon his land. Convicted in the court below and appeals.—*Reversed.*

*O. M. Slaymaker,* for appellant.

*George Cosson,* Attorney General, and *M. L. Temple,* County Attorney, for the State.

GAYNOR, J.—On the 21st day of August, 1915, there was filed in the office of the justice of the peace in and for Clarke County, the following information:

STATUTES:          "The defendant is accused of the crime
penal statutes:    of refusing to make answer to the enumer-
construction:
census act.        ator of the census as required by law.   For
that the defendant, on the 15th day of July, 1915, at the township of Washington in the county and state aforesaid, did wilfully refuse, after being duly warned that he was acting in contravention, to answer questions appearing on the

blanks furnished to the assessor and enumerator of Washington Township, Clarke County, as the same were prepared by the executive council of the state of ——— and furnished to T. A. Patterson, the assessor and enumerator for said township of Washington, Clarke County, state of Iowa, by W. A. Crist, auditor of said Clarke County, Iowa, contrary to the statutes in such cases made and provided, and against the peace and dignity of the state of Iowa."

To said information, the defendant pleaded not guilty, was tried before the justice without a jury, and convicted. From this conviction he appeals. The case was tried upon an agreed statement of facts, from which it appears that the following is a true copy of the blank prepared by the executive council of the state and furnished by the council to the auditor of the county, and by him distributed to the assessor or enumerator of the township in which defendant resided:

```
Card                        Name......................... Age.......
No. ...............         County...................P. O.............
Sex { Male                  Town or Township...........Ward.........
      Female                                Months in 1914
Color ...........           Occupation.............. Unemployed.......
Married.. Widowed..         Total earnings for 1914 from occupation $.......
Single.... Divorced..
Months in School 1914       Extent of { Common..... High
Public.... High.....        Education { Grammar.... School.....College....
Private... College..        Birth                Do you own your own { Yes
Read ...........            Place.............. home or farm?      { No
Write ...........           Incumbrance on farm or home $..............
Blind...... Deaf....        Value of farm or home $...................
Insane..... Idiot....       Military Service: Civil War..Mexican..Spanish..
If Foreign Born are         Infantry...Cavalry...Artillery ..Navy..State...
you Naturalized......        Regiment...Company...Church Affiliation......
Years in U. S........        Father's            Mother's
Years in Iowa.......         Birthplace...........Birthplace ............
                             Remarks ............................
                                Signed........................Assessor
```

It is further stipulated that Mr. Patterson was, at the time, the assessor or enumerator of the township; that he called on defendant and propounded to him the questions appearing on the above card; that all the questions were

answered, except the question, "Incumbrance on farm or home." This, the defendant refused to answer, after being warned that a refusal to answer was a violation of the statute. The questions were propounded and refusal to answer occurred in June, 1915.

The statute under which this prosecution is brought is found in Title II, Chapter 8, Sections 171, 172, 173, 174 and 175-a of the Supplemental Supplement to the Code, 1915, and provides:

"Section 171. The executive council shall cause to be prepared and printed, blank forms, suitable for the purpose of taking the census, to enable the assessors to make uniform returns of population and agriculture for the census. The schedules relating to the population shall comprehend, for each inhabitant, the name, age, color, sex, conjugal condition, place of birth, and place of birth of parents, whether alien or naturalized, number of years in the United States and in the state of Iowa, occupation, months unemployed, literacy, school attendance, and ownership of farms and homes; and the executive council may use its discretion as to the construction and form and number of inquiries necessary to secure information under the topics aforesaid. The schedules relating to agriculture shall comprehend the following topics: Name of occupant of each farm, color of occupant, tenure, acreage, value of farm and improvements, acreage of different products, quantity and value of products and number and value of live stock. . . . The specific form and division of inquiries necessary to secure information under the foregoing topics, shall be in the discretion of the executive council. Such blanks must be furnished to the respective county auditors, and by them to the township assessors, on or before the first Monday in January of the year in which the census is to be taken.

"Sec. 172. If any person shall refuse to make answer to any of the questions appearing on the blanks furnished the assessors and enumerators, such person shall be warned

that he is acting in contravention of law and upon further refusal it shall be the duty of the assessor or enumerator to file an information, under oath, against such person before any magistrate in the county, who shall thereupon issue a warrant for the arrest of the accused. If the person complained against upon hearing shall answer the questions required by law to be propounded by the assessor, the action shall be dismissed by the magistrate at the costs of the accused. If the accused be found guilty as charged, he shall be fined not less than $5 and not more than $100, and in default of payment of such fine shall be imprisoned in the county jail for not to exceed 30 days.''

The contention of the defendant is that this statute did not confer upon the executive council authority to incorporate in the blanks the question which he refused to answer; that the state, through its legislature, had authorized the executive council to prepare blanks for the purpose of securing information from the inhabitants of the state, for the use and benefit of the state, touching matters concerning which the state desired information; that the information desired by the state was exposed in the statute which conferred the authority upon the executive council; that the executive council had no authority or power, and none was vested in them by the state, to enlarge the scope of the inquiry provided for in the statute; that the defendant could not be held criminally for a refusal to answer any question propounded to him, though found in the blanks, which was not called for by the act of the legislature, which alone authorized the inquiry.

The question which the defendant refused to answer called for information touching the incumbrance, if any, upon his home or farm. The question arises: Did the state, through its legislature, in the enactment of the statute hereinbefore set out, call upon the citizen to answer this question, and did it authorize the executive council, through the subordinate officers, to propound this question to the citizen,

and exact of him, under penalty, an answer to the question?

This brings us to a consideration of the wording of the statute under which the authority is claimed to exist. This is a penal statute, so far as this defendant is concerned, and must be strictly construed. Unless the power is granted to this officer of the law to propound this question to the citizen and to force an answer under penalty of prosecution, he cannot be held as for a public offense in failing to answer. The authority of these officers of the state to propound this question and exact an answer under penalty must be found in the law under which the authority is claimed. Much argument has been made to the effect that it may be of interest to the executive council, or to the state as a political entity, to know the incumbrance upon farm lands of the state; that the financial condition of the people is an important matter; that the subject of taxation is of interest to the state; that the people are taxed to support the state; that, therefore, it may fairly and justly be said that the state ought to be permitted to know the financial condition of her people; that, in determining the financial condition of the people of the state, it is not only important to know whether they own their homes or farms, but also whether or not these homes and farms are incumbered.

The state has indicated in its legislative enactment just what it desires to know. It has been quite circumstantial in stating the subject-matters of inquiry, and the matters about which it desires information. The authority of these officers to interrogate the citizen rests wholly upon the statute. The subject-matter concerning which they are empowered to interrogate the citizen is set out in the statute. Not only must the power and authority be found in the statute, but the limitations of the power also are in the statute. The authority to interrogate a citizen of the state concerning some matters in which the state is interested, designated in the statute, does not authorize the officer to whom the power is given to inquire into any matter except such as, under the statute, he

is authorized to make inquiry into; and the citizen is not bound to answer any question propounded by these legal interrogators, except the question propounded be one which the interrogators have a legal right to propound.

The statute provides, in Section 172, that:

"If the person complained against upon hearing shall answer the questions required by law to be propounded by the assessor, the action shall be dismissed."

The criminal liability rests in a failure to answer a question which the law authorizes the interrogator to propound, with an injunction on the citizen to answer under penalty. An examination of these statutes will indicate, in a measure, the subject-matters concerning which the state desired information, and concerning which interrogations may be framed by the executive council, to which, when framed, truthful answers must be given by the citizen.

The purpose of the legislature is expressed in the first clause of the act: "To enable the assessor to make uniform returns of population and agriculture for the census." The schedule relating to population relates to the individual, and his ownership of farms and homes. The schedule relating to agriculture comprehends the occupancy of the farm, the personality of the occupier, the tenure under which he occupies, whether a lease, a fee simple, or lesser tenure; the acreage of the farm, the value of the improvements upon the farm, the acreage of the products of the farm, what in value, and live stock. The inquiry cannot go beyond the scope of the authority given, nor can the inquiry extend beyond the subject-matter concerning which the inquiry is authorized. It is conceded that, if this defendant is to be holden, it must be under one or two of the provisions of the statute:

1st. The inquiry authorized concerning ownership of farms and homes.

2d. The inquiry authorized concerning tenure of occupancy.

Tenure does not involve the idea of incumbrance. Tenure

is from the Latin word *tenere,* to hold, and, in its technical sense, is the manner by which land or tenements are holden. It signifies an estate in lands. The common tenure in this country is a fee simple. This is an absolute tenure. The tenure of the owner in land is not affected by a mortgage upon the land.

If it be conceded, as contended by the State, that, for some purposes, a mortgagee is held to be the owner (see *Lane v. Wright,* 121 Iowa 376), yet this ownership is separate and distinct from that tenure by which the fee simple owner holds and occupies the land. The statute did not contemplate that he should give the tenure of any but the occupant or holder of the legal title. But we are not agreed to the proposition that the mortgagee is the owner in the sense contemplated by this statute. In a case in which a mortgagee or lien holder is permitted to occupy the position of owner, his position is worked out of equitable considerations. Not that he is in fact owner, but for equitable considerations he is permitted to enjoy the rights of an owner. This is peculiarly true where the right to redeem is given to an owner, and is held to include a judgment creditor. No one would hold that a judgment creditor is, in any technical sense, an owner of the land upon which his judgment rests, and yet he is permitted to redeem and to occupy the position of owner for the purposes of redemption. In a criminal statute, we cannot give to the word "ownership" as broad a significance. See *Adams v. Beale,* 19 Iowa 61 ; *Swan v. Harvey,* 117 Iowa 58.

It is said, however, that, even conceding that the word "owner" does not, in a technical sense, include incumbrances, incumbrances ought to be included, for the reason that the state is interested, not only in knowing who owns the fee, but in knowing whether the fee is incumbered or free of incumbrance, and that the legislature, in authorizing inquiry as to ownership of farms and homes, intended to have inquiry made by the executive council as to incumbrance upon farms and homes. As said before, they did not authorize this

inquiry, and we do not extend the statute beyond the plain wording and meaning of the statute in criminal cases.

It is further contended that the executive council was authorized by the statute to exercise discretion in preparing the blanks as to specific form and division of inquiries necessary to secure the information, but the power to formulate and divide the inquiries does not give authority to propound inquiries not authorized by the statute. The topics are designated in the statute, and the discretion of the executive council relates only to the construction and form and number of inquiries necessary to secure information on the topics designated. No new topics can be introduced by the executive council, even under this discretion. The discretion conferred has its own limitations, and these limitations are to the topics designated.

A mortgage, in this state, or a judgment, which is a lien upon land, invests the mortgagee or judgment holder with no right which, in law, amounts to an ownership in the land. He has no right of entry upon it, to its possession, or to the enjoyment of any part of it, which can be deemed an estate in the land. He has simply a lien upon it to secure the payment of a debt. So long as the condition of the contract remains unbroken, he can do nothing whatever with the land. When the condition is broken, the breaking of the condition does not vest title, nor does it give him a right of possession. Nor, on foreclosure, does he become the owner. His right, upon foreclosure, is to have the land sold to anyone desiring to purchase it, or to purchase it himself. He does not acquire ownership in the land unless he becomes a purchaser. If sold, the amount due upon the mortgage is paid out of the proceeds. The balance, if any, is paid to the owner. A mortgagee can no more be considered the owner of land than can a judgment creditor. His right, upon condition broken, is to sell the land, take the proceeds, discharge the mortgage.

We hold, therefore, that the statute relied on did not authorize the propounding of the question involved in this

suit; that the defendant was not guilty of the charge made against him in refusing to answer the question; that the court erred in holding him guilty; and the cause is, therefore,—*Reversed.*

EVANS, C. J., LADD and SALINGER, JJ., concur.