Margaret Stevenson Wood, Appellant, v. Nancy Schwartz et al., Appellees.

No. 40317.

May 5, 1931.

Keenan, Barnes & Clovis, for appellant.

Ferguson & Ferguson, for appellees.

WAGNER, J.—The real estate in controversy is Lot 14, Wagon Works' addition to Shenandoah, Iowa. On September 15th, 1909, John W. Schwartz and his wife, Nancy, executed unto Jeremiah Tyler their promissory note for $450.00, and to secure the payment of the same, executed a mortgage upon the aforesaid real estate. The property in the note has been transferred to the plaintiff by indorsement and the mortgage duly assigned. The amount due upon the note at the time of trial was $812.95, for which amount judgment was rendered in favor of the plaintiff against the defendant, Nancy Schwartz. The plaintiff also prayed for the foreclosure of the mortgage, which requested relief was denied.

On March 14th, 1910, John W. Schwartz and George Middaugh entered into a written contract for the sale of said real estate by the former to the latter. The wife, Nancy Schwartz, did not sign said contract. It provides, in substance, that $50.00 is paid in cash, and that the remainder of the consideration, with interest, was to be paid in monthly installments at the First

National Bank. It further provides that the purchaser, Middaugh, is "to promptly pay all taxes, assessments or impositions that may legally become a lien upon said land subsequent to the date of this contract." It further provides, that, when the payments as therein specified have been made, time being the essence of the contract, the vendor, Schwartz, shall convey to the vendee, Middaugh, the aforesaid real estate by good and sufficient warranty deed. Middaugh went into possession of the real estate under this contract and retained the same until the 1st day of November, 1926, although he was delinquent in payments required by the contract. In February, 1912, John W. Schwartz and his wife removed from Iowa to the State of Utah, where they resided until the 13th day of July, 1922, when John W. Schwartz died intestate, leaving Nancy Schwartz as his surviving widow and a son and three daughters as his sole heirs-at-law. Said heirs and their respective spouses are made parties defendant in this cause of action, but they have defaulted. There has been no administration upon the John W. Schwartz estate.

In December, 1921, the aforesaid real estate was sold at the annual tax sale to J. F. Redfield, for the taxes due thereon for the year 1920, and a certificate of said sale was issued to him. J. F. Redfield died intestate December 2d, 1924, leaving Lucy F. Redfield as his surviving widow, and his son, Duane Redfield, as his sole heir-at-law. On July 16th, 1925, a tax deed was executed to the said Lucy F. Redfield and Duane Redfield. There is no question raised as to the regularity or legality of the proceedings leading up to the execution and delivery of the tax deed, and that the Redfields acquired title thereunder is conceded.

At all times after the execution of the contract between Schwartz and Middaugh, the latter was in possession of the real estate until November 1st, 1926, when the Redfields, having demanded from him the payment of rent which he refused, served notice upon him to quit the premises, and he vacated the same.

On December 21st, 1926, more than seventeen months after the Redfields received the tax deed, they, for the consideration of $276.69, approximately the amount with interest and costs which they had invested in the property, conveyed the same to Nancy Schwartz, by a good and sufficient deed of conveyance.

· On December 22d, 1926, Nancy Schwartz borrowed from the defendant, Home Building and Loan Association, the sum of $600.00, and executed unto said defendant her note or bond therefor, and to secure the payment thereof, executed unto said Association a mortgage upon the real estate.

The trial court held that the sale and conveyance of the real estate by the Redfields to Nancy Schwartz was a good faith transaction, was not a redemption of the real estate from the tax sale and that the deed from the Redfields transferred the Title to the real estate to Nancy Schwartz in fee simple, free and clear of any lien or encumbrance thereon of plaintiff's mortgage; that the plaintiff is not entitled to a foreclosure of her mortgage; that the mortgage of the defendant, Home Building and Loan Association is a first mortgage lien against the real estate; that the plaintiff is only entitled to a judgment against the defendant, Nancy Schwartz, for the amount due upon the promissory note. The court rendered judgment and decree accordingly, from which the plaintiff has appealed.

It is the appellant's contention that the transaction between Nancy Schwartz and the Redfields amounted only to a payment of the tax, or a redemption from the tax sale, and that the lien of her mortgage has not been extinguished. The validity of the tax deed executed by the County Treasurer to the Redfields is in no way questioned. The title of the Redfields, acquired by reason of the execution of the tax deed is not derivative, but the same constitutes a new title in the nature of an independent grant from the sovereign. See Petersborough Savings Bank v. Des Moines Savings Bank, 110 Iowa 519; Crum v. Cotting, 22 Iowa 411; Section 7286, Code, 1927. In Crum v. Cotting, 22 Iowa 411, at 420, referring to the title of one holding a tax deed, it is said:

"That is, that the tax title is held, not *under* or *through* the previous conveyances, but *adverse* to them. It is not incumbered by any claims or equities against the former owner, nor is it clothed with any rights or equities held by him as against third persons. The 'right, title, interest and estate of the former owner,' mentioned in the statute (now Section 7286, Code, 1927), which is vested by the deed in the purchaser, can only be the right, title, interest and estate *in the land,* and not

equities in favor of or against the former owner, *growing out of his being the 'former owner.' "*

The title of the Redfields was an indefeasible title, good as against the lien of plaintiff's mortgage, and good as against the whole world. It is an axiomatic truth that one can convey as good a title as he holds. Therefore, the title acquired by Nancy Schwartz from the Redfields must prevail, unless it be, that, because of some equitable principle, the transaction between her and the Redfields re-establishes the lien of the plaintiff as between her and the plaintiff.

The appellant contends that the contractual obligations of the mortgage made it the duty of Nancy Schwartz to pay these taxes, and she cites a line of our previous cases in which we have held, that where one is under a duty to the party against whom the title is asserted to pay the taxes, he cannot be allowed to prevail, although his title was procured from a stranger who obtained the tax deed. The appellant relies upon Dayton v. Rice, 47 Iowa 429; Blumenthal Brothers and Company v. Culver, 116 Iowa 326; Porter v. Lafferty, 33 Iowa 254; Cowdry v. Cuthbert, 71 Iowa 733; Olleman v. Kelgore, 52 Iowa 38; First Congregational Church of Cedar Rapids v. Terry, 130 Iowa 513; Crawford v. Meis, 123 Iowa 610. In Dayton v. Rice, 47 Iowa 429, the plaintiff held a mortgage on real estate given by Rice. Because of the failure of Rice, the mortgagor, to pay the taxes, the property was sold at tax sale, and in due time a tax deed issued to a stranger to the title. The mortgagor then procured a deed to be executed by the tax deed holder to Rice's son. The son stood in no better position than did Rice—in fact, held it for Rice. The court held that under such situation, the title procured by the mortgagor would not be allowed to prevail as against the mortgagee, saying:

"As between W. S. Rice, the mortgagor, and plaintiff, the mortgagee, the primary duty of paying this tax rested upon the mortgagor. He remained in possession of the property, and it was his duty to keep the taxes paid. So long as the relation of mortgagor and mortgagee continued, this obligation rested upon the mortgagor. * * * The duty of paying the taxes thus resting upon the mortgagor, he could not set up a title having

its origin in a failure to perform this duty, as against the mortgagee."

The same reasoning was applied by the court in the determination of Blumenthal Brothers and Company v. Culver, 116 Iowa 326. In Porter v. Lafferty, 33 Iowa 254, the Odems, the owners of the land, mortgaged the property to Collins, the mortgage containing covenants of warranty. Later, the Odems sold the property to defendants, who agreed to pay the mortgage as part of the consideration. The mortgage was not paid, was foreclosed and a sheriff's deed executed. The land was sold at tax sale for taxes due prior to the time of the execution of the mortgage and tax deed issued to a stranger to the title. The defendants then obtained a deed of conveyance from the tax deed holder. It was held, that the defendant's title would not be allowed to prevail as against the title held under the sheriff's deed; that, as between the mortgagee and the mortgagors, the Odems, the latter were under obligation to pay the taxes, and that the defendants, by their purchase from the Odems, with full knowledge of the conditions imposed upon their grantors, were substituted in their place. In Cowdry v. Cuthbert, 71 Iowa 733, the court held to the same effect. In Olleman v. Kelgore, 52 Iowa 38, First Congregational Church of Cedar Rapids v. Terry, 130 Iowa 513, and that portion of Crawford v. Meis, 123 Iowa 610, which is relied upon by the appellant, the party procuring title from the holder of the tax deed was either the owner of, or procured the title for the owner of a life estate. The remainder was owned by other parties. It was held in said cases, that, since the owner of the life estate at all times owed the duty to the remaindermen to pay the taxes, the title thus procured could not be allowed to prevail as against the remaindermen. The instant case is clearly distinguishable from the foregoing cases relied upon by the appellant.

The other cases, relied upon by the appellant and cited in her brief, are cases where a lien holder or one having such interest in the property as would give him a right to redeem from the tax sale, bought the property at tax sale or procured an assignment of the certificate of tax sale before the tax deed was executed, in which cases it was held that the transaction amounted to a redemption. It will be noted from this latter line of cases, that the party asserting title through the tax deed,

did not obtain title from a stranger who had previously procured a tax deed and whose title was good as against the world, and therefore, they are not applicable to the situation or controlling in the solution of the proposition which is before us for determination.

The pertinent question in the instant case is, Did Nancy Schwartz owe the mortgagee any duty to pay the taxes in question? The appellant relies upon the provisions of the mortgage, which contains the following provision:

"And we warrant the title to the same (Real estate in question) against all persons whomsoever and waive all right of dower and homestead therein."

It must be borne in mind, that the mortgage was executed in 1909 and the taxes for which the property was sold were those for the year 1920. The non-payment of said taxes did not constitute a breach of the warranty of title contained in the mortgage. The mortgage also contains the following provision:

"It is agreed, however, that the said *mortgagor* * * * shall pay all taxes on said mortgaged property," etc. (Writer's italics.)

It will be noted, that it was only the "*mortgagor*" who agreed to pay the taxes. John W. Schwartz, the husband of Nancy Schwartz, was the mortgagor. A mortgagor is one who holds title to the mortgaged premises. See White v. Rittenmyer, 30 Iowa 268. In the cited case it is declared: "A mortgagor is a freeholder of the mortgaged estate."

Therefore, in accordance with our pronouncement in Dayton v. Rice, 47 Iowa 429, and other similar cases, it was John W. Schwartz who was the mortgagor and owed the duty to pay the taxes.

But the appellant contends that by the mortgage itself, Nancy Schwartz agreed to pay these taxes. According to the instrument, this duty rested upon the "*mortgagor.*" Our statute, Section 10052, Code, 1927, provides:

"Covenants—spouse not bound. Where either the husband or wife joins in a conveyance of real estate owned by the other, the husband or wife so joining shall not be bound by the

covenants of such conveyance, unless it is expressly so stated on the face thereof.''

Nancy Schwartz did not, by any provision of the mortgage, agree to pay the taxes. A mortgage is a conveyance within the meaning of the aforesaid statutory provision. Section 10084, Code, 1927, is entitled ''Forms of conveyance,'' and said section provides:

''The following or other equivalent forms of conveyance, varied to suit circumstances, are sufficient for the purposes herein contemplated:

''1.  For a Quitclaim Deed. * * *

''2.  For a Deed in Fee Simple Without Warranty. * * *

''3.  For a Deed in Fee with Warranty. * * *

''4.  *For a Mortgage.*

''The same as deed of conveyance, adding the following: 'To be void upon condition that I pay', etc.'' (Writer's italics)

It is quite apparent from the foregoing, that Nancy Schwartz is not the mortgagor and, that, by reason of the aforesaid quoted statutory provisions, she was under no duty—contractual or otherwise—to the mortgagee to pay the taxes. Under such circumstances, none of the cases cited by the appellant and hereinbefore referred to, prohibit her from acquiring title from the holder of a tax deed whose title was good as against the world, and asserting it as against the mortgagee. While she may have had such interest as, that she had the right or privilege to redeem, there was no duty resting upon her, as between her and the mortgagee, to make the redemption. There is a vast difference between duty and right or privilege. The mortgagee had the same right of redemption. Nancy Schwartz did not owe the tax—she was not the owner of the property. As between the Schwartzes and the mortgagee, John W. Schwartz owed the taxes, but because of Middaugh's equitable interest under the contract for the purchase of the property and his agreement to pay the same, as between him and Schwartz, Middaugh owed the taxes. At no time material to this controversy, was Nancy Schwartz in possession of the property. The possession of the property, at all times material to the controversy, was held by Middaugh under his contract with John W. Schwartz.

It must be borne in mind, that at all times after March

14th, 1910, until after the execution of the tax deed to the Red-
fields, Middaugh was in possession of the property under a valid
and enforceable contract of sale as between him and John W.
Schwartz. Schwartz was the vendor and Middaugh the vendee.
The contract could have been foreclosed under the provisions
of Sections 12382 and 12383, Code, 1927. For said purpose,
Middaugh was the mortgagor and Schwartz the mortgagee. In
Cowdry v. Cuthbert, 71 Iowa 733, the court declared:

"Under the contract the plaintiff and Cuthbert occupied
the position of vendor and vendee. The former held the legal,
and the latter the equitable title. We also incline to think they
should be regarded as mortgagor and mortgagee (Code, Sec.
3329) (now Sec. 12382, Code, 1927) the plaintiff being the mort-
gagee, and Cuthbert the mortgagor."

It is well settled by our previous cases, that under a
contract such as the one between Schwartz and Middaugh, Mid-
daugh held the equitable title and Schwartz retained the legal
title to the real estate as security for the payment of the pur-
chase price. Middaugh held an equitable title in real estate
which would descend to his heirs, but Schwartz, at the time of
his death, had only personal property, which would pass to his
personal representatives. See Cumming v. First National Bank
of Sigourney, 199 Iowa, 667; In re Estate of Miller, 142 Iowa
563; In re Estate of Bernhard, 134 Iowa 603; Baldwin v. Thomp-
son, 15 Iowa 504; Woodward v. Dean, 46 Iowa 499. In In re
Estate of Miller, 142 Iowa 563, at 566, we said:

"It has been held repeatedly by this court that when a
landowner enters into a contract of sale whereby the purchaser
agrees to buy, and the owner to sell, and whereby the vendor
retains the legal title until the purchase money or some part
thereof be paid, the ownership of the real estate, as such, passes
to the purchaser, and that from such time forth the vendor
holds the legal title as security for a debt and as trustee for
the purchaser. The interest acquired by the vendee is 'land,'
and the right and interest conferred by the contract upon the
vendor is 'personal property.' In case of the death of the
vendee, his interest in the land would descend to his heirs. In
case of the death of the vendor, his interest would pass as per-
sonal estate to his administrator. A judgment against the ven-

dee would become a lien on the land, inferior, of course, to the rights of the vendor. A judgment against the vendor would not become a lien upon the land, nor could an execution thereunder be made by levy and sale of the land. Baldwin v. Thompson, 15 Iowa 504; Woodward v. Dean, 46 Iowa 499.''

There has been no administration of the estate of John W. Schwartz; the period in which administration could have been brought had not expired at the time of the execution of the tax deed, nor at the time of the execution of the deed from the Redfields to Nancy Schwartz; administration upon the Schwartz estate could have been begun at any time within five years from the time his death was known. See Section 11891, Code, 1927. Since administration was not granted, those entitled by inheritance to the personal property and choses in action of John W. Schwartz at the time material to this controversy, had no title to his contractual rights and interests under his contract with Middaugh. See Haynes v. Harris, 33 Iowa 516; Baird v. Brooks, 65 Iowa 40; Stahl v. Brown, Admr. 72 Iowa 720; Richie v. Barnes, 114 Iowa 67. The most that can be said is, that the interest which those having a right by inheritance in the personalty of John W. Schwartz, deceased, had, at the time in question, was a contingent right depending upon the solvency of his estate.

The appellant pleads that, on the death of John W. Schwartz, the said Nancy Schwartz became the owner of an undivided one third of said real estate, and that his four children made parties defendant, each became the owner of an undivided one sixth thereof, but that, if the court should find that the said John W. Schwartz prior to his death, had sold said real estate on contract but had retained the legal title to secure the payment of the remaining purchase money, then the widow and children above referred to, became the owners of a lien on said real estate which was subject and inferior to the lien of this plaintiff, and that they owned said lien in the proportions above set out.

The appellant takes no definite position as to whether Nancy Schwartz was a tenant in common of the real estate, or whether she was jointly interested in the interests of John W. Schwartz in the contract between Schwartz and Middaugh, nor do we find it necessary to determine what her exact interests

were. Assuming, without deciding, that she was a tenant in common of the real estate, our previous cases are determinative as against the appellant. See Alexander v. Sully, 50 Iowa 192; Crawford v. Meis, 123 Iowa 610. It must be borne in mind, that at no time material to the controversy was Nancy Schwartz in possession of the real estate. Middaugh held the possession of the same until after the execution of the tax deed, when the Redfields served notice upon him to quit, and thereupon he vacated the premises. Middaugh, as a witness, testifies: "I went into possession of that property in March, 1910, and continued until November 1st, 1926. I made no claim to the property after the issuance of the tax deed to the Redfields." In Alexander v. Sully, 50 Iowa 192, the property was originally owned by Hugh Alexander and Thomas Alexander. Hugh Alexander died in 1857, and the plaintiff is his widow. The land was sold for taxes and a tax deed executed to Evans, a stranger to the title, who held the same two years and two months and then conveyed the property to the plaintiff. The defendant claimed title to one half of the property through mesne conveyances from Thomas Alexander. The court in passing upon the claims of the parties made the following pronouncement:

"No objection is made to the validity of the tax deed under which the plaintiff claims; but it is urged at the time she obtained title thereunder she was a tenant in common or joint owner of the premises with the defendant, or those under whom he claims, and that her purchase of the superior title enured to the benefit of the defendant upon his paying his *pro rata* share of what it cost. * * * It has been held that a tenant in common or joint owner cannot, by a purchase at a tax sale and a conveyance thereunder, oust his co-tenant, but that such purchase is presumed to have been made for the benefit of both. Weare v. Van Meter, 42 Iowa 128; Fallon v. Chidester, 46 Iowa 588. The question for determination in the case at bar is materially different from this. Here the superior title was vested in a stranger, and had been for two years, and the question is whether one of the former joint owners can purchase such title for his own exclusive benefit, or whether, when the tax title accrued and became vested in Evans, the joint ownership previously existing was not thereby dissolved. That such would be the case

is intimated, if not decided, in Page v. Webster, 8 Mich., 263. The chancellor concedes, in Van Horne v. Fonda, 5 John. Ch., 388, that cases may exist where one tenant in common may purchase in an outstanding title for his own exclusive benefit; and the true rule seems to be, as there announced, *that where the tenants or owners are in possession* under an imperfect title one cannot purchase an outstanding title and appropriate the whole to himself and thus oust the other. See, also, Venable v. Beauchamp, 3 Dana, 321. *But this principle does not extend to a tenant in common after eviction.* Coleman v. Coleman, 3 Dana, 398. * * * If the superior title did not in and of itself amount to an ouster and eviction, we think the principle, under the circumstances, must be the same as if it did have that effect. * * * Whatever title they (the joint owners) previously had was merged in the superior title, and either could purchase for his own exclusive benefit as well as a stranger to the previous title could.'' (Writer's italics.)

It is apparent that if Nancy Schwartz was a tenant in common, she was such with her children, or with Middaugh, and none of said parties are making any contention as to the rights of Nancy Schwartz to the property. In any event, the appellant was not, and could not be a tenant in common with Nancy Schwartz. Assuming, without deciding, that she was a tenant in common with her children, then none of the tenants in common were at the time material to the controversy, in possession of the property. Also assuming, without deciding, that she was a tenant in common with Middaugh, she at no time material to the controversy was in possession of the property and Middaugh has vacated the same and makes no contention as against her rights therein. It will be noted that in the cited case, Evans, the holder of the tax deed, conveyed the property to the plaintiff-widow twenty-six months after obtaining the tax deed, while in the instant case, the Redfields conveyed the property to Nancy Schwartz seventeen months after obtaining the tax deed. In 37 Cyc. 1349, 1350, the author aptly states:

''* * * and if the purchase at the tax-sale is made by an entire stranger, and the title is held by him until it has become fixed and mature, either of the former co-tenants may then buy from him without restoring the relation of co-tenancy or being

required to hold in trust for the others, provided this is not done in pursuance of an arrangement or scheme to use the stranger as a cover and oust the co-tenants.''

In Crawford v. Meis, 123 Iowa 610, hereinbefore referred to, Eliza Crawford was the owner of a life estate in the property in question; the remainder was owned by six of her children. The property was sold at tax sale and a tax deed in due form executed to a stranger; this stranger executed a deed unto two of the remaindermen; their title, derived through their deed from the holder of the tax deed, was held to prevail over the remaining co-tenants in remainder. It is to be noted that the life tenant was in possession at the time material to the controversy—that the remaindermen were not in possession. The court, in passing upon the proposition, referred to Alexander v. Sully, 50 Iowa 192, hereinbefore cited, declaring:

''We are content to follow the doctrine of the case cited, and, giving the same application to the case before us it must be said that there was no restriction upon the right of the grantees of David Crawford (the holder of the tax deed) to acquire and hold title for their own benefit.''

It is quite apparent from the foregoing, that, even if it be true that Nancy Schwartz was a tenant in common, under the record in this case the title obtained by her from one whose title was good as against the world is equally indefeasible.

If Nancy Schwartz had a contingent interest in the rights or interests in the Schwartz-Middaugh contract, this in no way increased the duties which she owed to the appellant under the mortgage executed by her and her husband, and we have already ascertained that she was under no duty as between her and the appellant to pay the taxes in question. If she had any contingent interest in the Schwartz-Middaugh contract, then clearly she stood in the relationship as one of the mortgagees and Middaugh as the mortgagor. It must be borne in mind, that Nancy Schwartz did not, herself, buy this property at tax sale, nor obtain an assignment of the certificate of tax sale, but she obtained a deed for the property from one who held a tax deed whose title is in the nature of an independent grant from the sovereign, and whose title was good as against the world. At this point, we refer to Safe Deposit & Trust Company v. Wick-

hem (S. Dak.), 62 Am. St. Rep. 873, where it is held, that, if real property is subject to both a first and second mortgage and sold for delinquent taxes to a stranger who obtains a tax deed, who in turn, without collusion, conveys the property to the junior mortgagee, said junior mortgagee can assert the title so obtained as against the first mortgagee. The junior mortgagee in that case, was the county treasurer; there was no collusion as between him and the party obtaining the tax deed; the trial court found for the junior mortgagee. In passing upon the proposition, the court said:

"Obviously, a junior mortgagee cannot, by purchase at a tax sale, acquire a title which shall defeat the lien of a senior encumbrancer; but appellant and respondent had ceased to be encumbrancers, as to one another, and had become strangers by neglecting to pay the taxes, and by permitting an absolute and fee simple title to ripen and become fixed in Dillon & Preston (the holders of the tax deed) before they sold and conveyed the premises, for a valuable consideration, to respondent (junior mortgagee) * * *. A reversal of this case would be equivalent to a holding that the sale of land for delinquent taxes by a county treasurer, who is individually a junior mortgagee whose lien has been lost, and the execution of a tax deed thereto, in his official capacity, to the holder of the certificate after his title has fully matured and become absolutely vested, is, in the absence of any collusion, sufficient in law to incapacitate such treasurer and junior mortgagee from ever acquiring, as against a senior mortgagee, title thereto by deed from a stranger."

The court also quotes from Justice Cooley in Connecticut Mut. Life Ins. Co. v. Bulte, 45 Mich. 113, the following:

"It certainly cannot be said that the second mortgagee owes any duty to the first mortgagee to protect his lien as against tax sales. Neither, on the other hand, does the first mortgagee owe any such duty to the second mortgagee or to the owner. *To the state each one of the three may be said to owe the duty to pay the taxes; and the state will sell the interest of all, if none of the three shall pay. As between themselves, the primary duty is upon the mortgagor;* but, if he makes default, either of the mortgagees may pay, and one of the two must do

so, or the land will be sold and his lien extinguished.'' (Writer's italics.)

The court refers to a Kansas case, saying:

''But we are not inclined to go to the full extent of the Kansas case, and adhere to our former decision that had Wickhem (the second mortgagee) directly or indirectly, purchased the property at the tax sale, or purchased or contracted for the tax certificate, before his mortgaged lien was extinguished, he would have held his tax title subject to plaintiff's equity. The evidence, however, was undisputed that Wickhem did not, directly nor indirectly, purchase the property at the tax sale, or make any contract in reference thereto, until the tax title had vested in Dillon & Preston, and the mortgage liens were extinguished.''

The trial court found, from the evidence, that there was no agreement or collusion between the Redfields and Nancy Schwartz, that they were taking said tax deed for her benefit or any of the other owners of said real estate. We have carefully read the record and on this proposition agree with the trial court. It is true, that the consideration is approximately the amount, with interest and costs that the Redfields had invested in the property. J. F. Redfield, as well as any other person, had the legal right to buy this property at tax sale in 1921. His widow and son, after his death, had the legal right to obtain a tax deed by following the law in such cases made and provided. The validity of the tax deed in their hands is not questioned. It is true, that Duane Redfield testified that in a conversation with Elbert Read, held about the time the tax deed was executed, in which Read purported to be acting for the Schwartzes: ''I believe I told Mr. Read I would turn it (the property) back if they paid the taxes. I think that is correct.'' He further testified:

''From the time we got the tax deed until we conveyed to Mrs. Schwartz, we claimed to be the absolute owners of the property. Q. And you had no agreement to turn it back? A. Only what I told you previous to taking the tax deed. Q. I will ask you to state if it is not a fact that that conversation just had to do with redeeming the property prior to the time

you got the tax deed? A. Yes, sir. Q. And after you took the deed it was all off? A. Yes, sir."

The Redfields, as owners of the property, took the necessary steps to procure and did procure the possession of the same from Middaugh. The deed to Nancy Schwartz was not executed forthwith. No arrangement was finally perfected as between the Redfields and Nancy Schwartz until seventeen months after the date of the execution of the tax deed. The Redfields acted in accordance with the law and received an indefeasible title. The amount which they agreed to take for their property was a matter of their own concern. There is nothing in the record to show any bad faith on the part of the Redfields or Nancy Schwartz. We are abidingly satisfied with the finding of the trial court on this proposition of fact.

We have considered all propositions relied upon by the appellant for a reversal. As has been previously pointed out, Nancy Schwartz was not the mortgagor and owed the appellant no duty to pay the taxes in question; that duty rested upon others. The vesting of the title under the tax deed in the Redfields, operated as an ouster and destruction of the interest of the plaintiff and the interests of all parties concerned, whatever they were. Since the Redfields obtained an indefeasible title, it is apparent from the record in this case, that Nancy Schwartz, claiming through the Redfields, obtained a title equally as good. It is also apparent that, as held by the trial court, the mortgagee, Home Building & Loan Association, claiming through Nancy Schwartz, as mortgagor, has a valid lien against the real estate. The judgment of the trial court is correct, and the same is hereby affirmed.—Affirmed.

FAVILLE, C. J., and EVANS, STEVENS, and GRIMM, JJ., concur.

MORLING, DE GRAFF, ALBERT, and KINDIG, JJ., dissent.

MORLING, J. (dissenting).—The promissory note sued upon, dated September 15, 1909, reads:

"On or before September 15, 1911, after date, for value received, we jointly and severally, as principals, promise to pay Jeremiah Tyler or order, the sum of Four Hundred Fifty and no/100 dollars, with interest * * *"

The note was given for purchase money. The makers of the note are as to the holder both principals. As between themselves each may be a principal for his proportionate share of it and surety for the other. McLean v. McLean, 199 N. W. 459, 184 Wis. 495. Through the transaction of which this note and mortgage were a part evidently John W. Schwartz acquired the legal title to the real estate in controversy and defendant Nancy Schwartz acquired her inchoate, (so-called dower) later consummate, interest—a one-third interest contingent on her surviving him and not waiving it. This interest was a valuable property right which the court will recognize and protect. Buzick v. Buzick, 44 Iowa ·259. The court will not refuse protection to a legal interest merely because its value may be small. Stinson v. Connecticut Mut. Life Ins. Co. (Ill.), 51 N. E. 193.

The mortgage after describing the property contains the ordinary covenants for title, following which is a defeasance clause as follows:

"This conveyance to be void if the said mortgagors shall pay or cause to be paid to said mortgagee, or his assigns the sum of Four hundred fifty and no/100 dollars * * * according to the tenor and effect of the one promissory note * * * of the said John W. Schwartz and Nancy Schwartz * * * It is agreed, however, that the said mortgagor shall, while any part of said principal or interest remains unpaid, neither commit nor permit waste on said premises; shall pay all taxes on said mortgaged property before they become delinquent, and shall keep the buildings thereon insured to the satisfaction of the mortgagee, and the policy payable in case of loss, to the holder hereof, as his interest may appear; and in case of failure to comply with either of these provisions, the holder hereof shall have the option to pay said tax and effect said insurance, and may add the amount so paid to the sum next falling due, with interest thereon at eight per cent per annum from date of payment until repaid.

"It is also agreed that if said mortgagor shall fail to pay principal or interest as they fall due, or neglect or refuse to pay the taxes or effect the insurance, as above provided for, then the holder hereof may have the option, without giving notice, to consider the whole indebtedness secured by this mortgage due and collectible, and may at once proceed to foreclose. * * * And

it is specifically agreed that this mortgage shall be a lien upon the premises herein described for the full and complete performance of all the stipulations contained herein * * *''

The certificate of acknowledgment describes John W. Schwartz and Nancy Schwartz ''as mortgagors.''

The covenants against waste and to pay taxes, to keep the buildings insured, as it seems to me, were not mere covenants of title but the covenants of both debtors to maintain the security on penalty of precipitation of the maturity of the debt. Performance of those covenants was in the interest of both makers of the note and specifically made a lien upon the premises.

Furthermore, a purchaser, or mortgagee, would not ordinarily accept a conveyance or mortgage from the husband without the joinder of the wife in the execution of the instrument. Schwartz and wife did sign the mortgage. Thereby not only Schwartz mortgaged his estate in fee but the wife, Nancy, mortgaged her inchoate dower or contingent one-third. She pledged a valuable property right to the payee of the note to secure the payment of her indebtedness represented by the note. Tyler was the mortgagee. Nancy Schwartz was a party to the mortgage. If she was not a mortgagor what was she? A mortgagor is ''one who executes a mortgage.'' *Webster's New Int. Dict.*, ''Mortgagor''; *Anderson's Law Dict.*, ''Mortgagor.'' John W. Schwartz and his wife Nancy both were mortgagors. It was stipulated in the mortgage ''that the said mortgagor * * * shall pay all taxes on said mortgaged property.'' There were two mortgagors. The effect of using the singular instead of the plural number in the promise was to impose a several obligation upon each of the makers of the instrument. 13 C. J. 579; 8 C. J. 67.

''Plural language may, in a proper case, be held to include the singular and the singular the plural. The court may, where there is an obvious mistake on the face of the instrument which is corrected by other expressions therein when the whole instrument is considered, correct the error without resort to equity.'' 2 Elliott on Contracts, Section 1535.

To hold that the omission of a scrivener to insert the letters ''s'' or ''ies'', as the case may be, in the blank following the

printed "part", or "mortgagor", or other designation of party or that the typographical error of omitting the "s" from the description of the parties, leaving it in the singular as "mortgagor" or "grantor", or the like, so as to make only one of the makers of the instrument the contracting party mortgagor, grantor, or the like, especially in a case where joint and several obligors are pledging their common property and combined interests in real estate for the payment of their common debt would be to hold that the court may not correct an obvious inadvertence or clerical error, a correction, however, which the court may make, (2 Page on Contracts (1905), Sec. 1125; 13 C. J. 538; Oleon v. Rosenbloom, 93 Atl., 473, 474, 247 Pa. 250, 253, L. R. A. 1915F., 968, Anno. Cases 1916B 233) and ought to make.

White v. Rittenmyer, 30 Iowa 268, cited in the majority opinion, merely holds that as between the mortgagor and the mortgagee of a freehold the mortgagor is the freeholder and the mortgagee a lien holder. It in no wise holds that a wife who executes with her husband a mortgage on his property is not one of the mortgagors. That White v. Rittenmyer, 30 Iowa 268, is authority for holding that the wife, an obligor on the note, was not a mortgagor because her interest in the real estate mortgaged was less than a freehold, or because she was merely the holder of an inchoate interest or possibility it seems to me is wholly untenable.

Section 10084, Code, 1927, providing forms of conveyances, "* * * I hereby quitclaim to ——— all my interest" and "* * * I hereby convey to ——— the following tract * * *," was hardly intended to mean that the conveyance must be in the singular and that only one person could be grantor or mortgagor. Section 10052, that, "where either the husband or wife joins in a conveyance of real estate owned by the other, the husband or wife so joining shall not be bound by the covenants of such conveyance, unless it is expressly so stated on the face thereof," was intended as a rule of construction whereby the spouse joining only to release "dower" in the other's property would not be liable on the covenants for title. It was not intended to interfere with the rights of husband and wife to contract or to execute joint or joint and several obligations or covenants further than to interpret those for title. It was not intended to

prevent husband and wife from being bound by their joint or joint and several agreements to pay and to secure or pledge their interests in each other's property. Thordson v. Kruse, 173 Iowa 268. The covenant relied upon here is not a covenant for title. Both husband and wife were principal mortgagors. They were mortgaging all of their interest and estate in the land in question to secure their joint and several obligation. They covenanted with respect to their debt and the security they were giving that they would pay all taxes on the property they were jointly mortgaging. If Section 10051 has any application then even if the word "mortgagors" (in the plural) had been used the wife would still not have been bound to pay the taxes or to protect the security. As between the mortgagee and the mortgagors it was agreed that the mortgagors should pay the taxes. Because of her indebtedness and her conveyance of her interest by way of security the wife did assume toward the payee of the note and to the mortgagee an obligation to pay taxes. Inasmuch as Mrs. Schwartz as between her and the holder of her obligation and mortgage given to secure it had agreed to pay the taxes she could not evade that obligation or obtain to herself any benefit from its evasion either by buying at tax sale or by purchasing before or after the execution of tax deed the interest or title of the purchaser. In either case she was merely doing what she had covenanted with the mortgagee to do.

But obligation to pay taxes, though commonly referred to as a reason why a mortgagor may not obtain a tax or other title to the mortgaged premises adversely to the lien of the mortgage is not the only reason nor is even the more important reason. While the relationship of mortgagor and mortgagee is not technically for all purposes fiduciary (41 C. J. 602) nevertheless it is one that demands good faith on the part of both mortgagor and mortgagee toward each other and toward the property which by the mortgage is devoted to securing the payment of the debt.

In Woodbury v. Swan, 59 N. H. 22, it is said:

"Mortgagor and mortgagee have a unity of legal interest in the protection of their titles against sale for nonpayment of taxes, and against outstanding tax titles; and it is not equitable that either of them should act adversely to the other in the acquisition and use of such titles. Therefore, the mortgage contract comprises an implied agreement that, while either party may

buy a tax title for the preservation of his right in the mortgaged property, neither of them will buy a tax title for the extinguishment of the title, in the maintenance of which they, as well as partners and tenants in common, are in law jointly concerned. The common interest of these parties in the mortgaged property creates a relation of trust and confidence.''

Such is the law of this State as it has been applied in various circumstances. It is the law as applied to the holders of concurrent or subsequent lien holders. They may pay the taxes, subrogate themselves to the priority of the lien of the State therefor and thus protect themselves.

In Lane v. Wright, 121 Iowa 376, it is said:

''The point made, and one which we think decisive of this appeal, is that Wright, as the holder of a lien upon the land, and of a sheriff's certificate of a sale thereof, cannot be allowed to defeat the senior lien by obtaining a tax deed, and that in equity his purchase of the certificate of tax sale must be considered and treated as a redemption. We regard it as a well-settled proposition under the decisions of this court that, where several persons hold claims which are liens upon the same land, equity will not permit one of the lienholders to absorb the common fund by purchasing the land at tax sale. In Fair v. Brown, 40 Iowa 209, the plaintiff was the holder of a mortgage lien upon certain land. The defendant Weiser was the holder of a senior judgment lien and of a junior mortgage upon the same premises, and sought, as did the appellee Wright in this case, to defeat plaintiff's lien by the purchase of outstanding certificates of tax sale and obtaining deed thereon. As is now done by the appellee, Weiser sought to escape the point made against the tax deed by urging that he was under no legal obligation to pay the tax and therefore could rightfully make the purchase and acquire an indefeasible title. To this contention we said that, notwithstanding he was bound neither by law nor contract to pay the delinquent tax, yet 'the land is a common fund for the payment of plaintiff's mortgage and defendant's liens. Defendant was authorized to redeem from the tax sale. Rice v. Nelson, 27 Iowa 148. Equity will not permit him to acquire the title for an inconsiderable sum, when he was authorized to remove the trifling incumbrance by redemption. Though not

bound to pay the tax, yet it was his right to do so to protect his own liens. He cannot obtain that protection by pursuing a course that will deprive the mortgagee of his security, and leave the mortgagor to sustain the weight of liens which are personal judgments, after being deprived of his property by tax title. Equity will relieve against such oppression, and teach the grasping creditor moderation in his demands, and that he cannot destroy others to build up his own fortunes.' In Garrettson v. Scofield, 44 Iowa 37, we cited and approved this principle, saying: 'The defendant Scofield and the plaintiff were both mortgagees, and both claiming interest in the land to the extent of their respective mortgages; and while it is true there was no absolute duty resting upon either to pay the taxes, yet they had such an interest in the land as to make it necessary to do so in order to properly protect the title. Under these circumstances we do not believe that the payment of taxes by either at the tax sale should entitle him to the statute penalties.' The same doctrine was reiterated in Eck v. Swennumson, 73 Iowa 423. See, also, Manning v. Bonard, 87 Iowa 648; and Cowdry v. Cuthbert, 71 Iowa 733. In each one of the cited cases there was no legal obligation to pay the taxes resting upon the party asserting the tax title, but in each it was held that a person having the right to redeem from tax sale cannot, by refusing or neglecting to exercise that right and becoming a purchaser at the sale, extinguish the liens held by others upon the property so obtained. As is illustrated by these precedents, it is not required that a party shall be vested with ownership of the property in the sense of holding title to it in order to come within the influence of this rule. The term 'owner', as used in determining who may redeem from tax sale, has been construed to include mortgagees, judgment creditors and holders of contingent interests in the land affected by the sale. Adams v. Beale, 19 Iowa 61; Swan v. Harvey, 117 Iowa 58. The principle which involves the rule denying the right of one lienholder to obtain a tax title to the disadvantage of others in similar relation to the common security seems to be that, as the law gives each of them the right to protect the security by making a redemption, and gives the redemptioner a preferred lien to the extent of his disbursement for that purpose, it would be inequitable to permit him to waive such right and become a purchaser at the sale,

and thus, by an expenditure not greater than would have been required to pay the tax, exclude his fellow lien holders from all participation in the common fund. The proposition seems to be entirely just, while the opposite rule would often bring about manifestly inequitable results.''

In Gilman v. Heitman, 137 Iowa 336, this language is quoted and the doctrine re-affirmed. The disability to purchase an adverse title extends to the entire tract which is the subject of the tax sale though the common interest may be confined to one part of it or to a part of the entire estate. Cone v. Wood, 108 Iowa 260. By the term ''obligation to pay the tax'', or its equivalent, as used in the cases cited in the majority opinion is not meant a legal liability for the tax. It means rather the necessity of paying the tax in order to protect the interest of the party paying or attempting to take a tax title. In Cone v. Wood, 108 Iowa 260, 266, it is said:

''Had the trust company owned the land its mortgage was on, we do not see why the two cases would not be alike in principle. The inhibitions of the rule apply as strongly to a mortgagee as to an owner. In the cases the inhibitions are made to depend at times on when the person has the 'right' to pay the taxes, and at others when he is under an 'obligation' to pay them. The distinction is not as important as it is thought to be. The words are many times interchangeable in their use. Sometimes the word 'obligation' is used to denote an agreement or undertaking to pay taxes; at others, it is used in the sense of an obligation to do so to protect an interest or title, as, in one sense, the owner of land is not under obligation to pay the taxes thereon, for he may forfeit it, and yet in another sense he is under such an obligation in order to preserve his title. The same is to be said of a mortgagee whose interest requires such a payment for its protection. He must forfeit his lien or pay the taxes. The Illinois case speaks of the owner paying his proportion of taxes assessed, as if that might have been done, and we do not lose sight of the fact that, in this case, there was no defined way of doing that. But, without an attempt to point out a way for doing it, which we should not do, it is to be said that, whatever was the legal requirement to discharge the taxes from the mortgaged lot, he was compelled to do, and thus re-

lieve the land that he could not purchase at tax sale, but might pay the taxes on. If the company must pay all taxes due on a lot and take an added lien therefor, or, if a proceeding might be adopted to fix its proportion, in either case we think, before it could purchase at tax sale, it must make such payment that, if it takes a title, it will not be based in part on its own default. The thought runs throughout the cases. As more or less sustaining the rule, see Maul v. Rider, 51 Pa. St. 377; Cooley v. Waterman, 16 Mich. 366; Manning v. Bonard, 87 Iowa 648; Fair v. Brown, 40 Iowa 209. It is true that few of the cases involve substantially the same facts. The general rule, in all its bearing, is against the right to acquire such a title. It could not be permitted, without involving complications that should be avoided. * * * These cases, cited by appellant, state a rule peculiarly applicable to owners of land purchased after an incumbrance has attached, and for the discharge of which he is under no obligation arising from his acquisition of the property, and as to such he may perfect or better his title by a purchase at a tax sale. We do not see that such a rule has ever been held as to a mortgagee, and, in fact, the reasons do not exist for it. They are usually, if not always, against it. It is said, as against the defendant's claim, that he does not show that he, or Cox, his mortgagor, had title to the property at the date of the tax sale, but we think the facts appear throughout the record as we have stated them.''

The principle has been applied to mortgagees. Id. Eck v. Swennumson, 73 Iowa 423; Beacham v. Gurney, 91 Iowa 621.

The cases are extensively reviewed in National Surety Co. v. Walker, 148 Iowa 157.

The court again quotes from the Fair case, 40 Iowa 209, Eck v. Swennumson, 73 Iowa 423, and from Garrettson v. Scofield, 44 Iowa 35, where it is said:

''The defendant, Scofield, and the plaintiff were both mortgagees, and both claiming interests in the land to the extent of their respective mortgages, and while it is true there was no absolute duty resting upon either to pay the taxes, yet they had such an interest in the land as to make it necessary to do so in order to properly protect the title. Under these circumstances we do not believe that payment of the taxes by either at tax sale should entitle him to the statute penalties. See Fair v.

Brown, 40 Iowa 209. Scofield having taken the junior mortgage for a large amount, such as we are bound to believe, from subsequent events, it was not expected Whitstine or his grantee would pay; his relation to the plaintiff in this case is more in the nature of a subsequent purchaser from Whitstine, than that of a stranger purchasing at tax sale. At least both were the holders of liens and the payment of taxes was necessary to protect the title.''

The rule applies to the grantee, or other successor in interest of the mortgagor. Union Central Life Ins. Co. v. Parks (Ore.), 292 Pac. 304.

As shown it is a rule of good faith and applies alike to all who are interested in the mortgage, and to all who own interests in the mortgaged property not hostile to the mortgage. One whose estate or interest in the property is not in hostility but in subordination to the mortgage incumbrance and who may pay the taxes or redeem from tax sale, if he would protect his interest may do so by redeeming and subrogating himself to the prior lien of the tax. Good faith toward the holder of the lien which is superior to his interest precludes him from obtaining an adverse title when he can fully protect his interest by redeeming, or by paying the tax.

This is in harmony with general principles of law governing pledges by one of several obligors. If the wife as a joint debtor were compelled to pay more than her share of the note, or if she were a surety as to which there is some evidence, she had the right to contribution. 13 C. J. 826. The husband's property was mortgaged for the payment of this debt. She had the right to subrogation to the mortgage. She could not be deprived of this right by the act of the husband or the creditor. See 50 C. J. 230, et seq., 284, et seq.; 13 C. J. 826, et seq.; Haggarty v. Pittman, 1 Paige's Chan. 298, 19 Am. Dec. 434; Bisby v. Walker, 185 Iowa 743.

In Stewart v. Fairchild-Baldwin Co. (N. J.), 106 Atl. 406, 409, it is said:

''It is recognized that, with respect to taxes, there is a fiduciary relation between the mortgagor, and those holding under him, and the mortgagee, and that they are bound in equity and conscience to do no act, and to suffer none to be done, which

will destroy the mortgagee's title or impair his security. In jurisdictions in which it is recognized that a mortgage does not convey the legal title, and does not give the mortgagee the right to immediate possession, courts of equity, after default, but prior to sale, have sanctioned the practice of appointing receivers to sequester the rents and profits, although not expressly pledged in the mortgage, where the mortgagor is insolvent and the security inadequate, upon the ground that the mortgagee acquires an equitable lien upon the rents, which holding must have been based upon the theory that, unless a receiver is appointed, the rents are liable to be collected by the mortgagor and diverted from their legitimate course, which must be assumed to be a keeping down of incumbrances upon the property.''

The husband, John W. Schwartz, made a contract with Middaugh to sell the real property to Middaugh. The wife Nancy did not join in the contract and her interest in the mortgaged property was in no wise diminished or otherwise affected by the sale. Her contingent or inchoate dower right remained just what it was before. It was a possibility which might ripen into title and in this particular case by the death of the husband in the lifetime of the wife it did ripen into an estate in fee simple in an undivided one third. The wife was not a party to the contract, was not bound by it, had no interest in it, took her third unaffected by it and on the death of the husband in her lifetime became an owner in common with his heirs or purchaser. Van Veen v. Van Veen, 213 Iowa ——. If the contract had the effect of making the interest of the vendor personalty so far as the succession to the two-thirds on his death was concerned it could not in the face of the statute have had the effect of converting the wife's contingent third of the husband's real estate into a third of the amount owing on the contract, even though we assume that the husband had other properties out of which the one-third in value of all his legal or equitable estates might have been set off to her. Code Section 11990. At the time of his death the husband held the title to the land. Middaugh held the equitable title, but to only two-thirds. The land had been sold for taxes but the time for redemption had not expired. As between the widow and Middaugh, Middaugh, though in possession, had no contract under which he might acquire her contingent one-third. In the event of the husband's

death in the widow's lifetime, Middaugh, though in possession, was in possession under the husband's contract, not the wife's contract, and got no title to the one-third. He was, therefore, under no obligation to her to pay taxes.

In Rice v. Nelson, 27 Iowa 148, 151, involving the right of the owner of an unassigned dower right to redeem (which would be in point on the facts in this case after the death of the husband) it is said:

"It may, therefore, be laid down as a general rule, that any right, whether in law or equity, whether perfect or inchoate, whether in possession or action, amounts to ownership in the land, and that a charge or lien upon it constitutes the person claiming it an owner, so far as it is necessary to give him the right to redeem."

In Adams v. Beale, 19 Iowa 61, quoted with approval in Swan v. Harvey, 117 Iowa 58, 62, it is said:

" 'Where land has been mortgaged to secure a debt and judgment creditors have liens upon it, and the land is in possession of a stranger to the title, whose possession is ripening into a right, each is an owner according to the extent of his interest and claim, and each has a right to protect his interest by a redemption from a tax sale. Blackwell Tax Titles, 496; Id. (2d Ed.) 423. Any right which in law or equity amounts to an ownership in the land.; any right of entry upon it, to its possession or enjoyment, or any part of it, which may be deemed an estate, makes a person an owner, as far as it is necessary to give him the right to redeem.' "

Furthermore, the evidence I think shows that Nancy Schwartz' alleged purchase of the tax title was a subterfuge adopted to defeat plaintiff's mortgage. Her daughter testifies that she transacted the business for her mother; that in arriving at the amount, $286.49, paid to the Redfields for the tax title "We got the figures from the auditor. That is they said that is what Mr. Redfield had paid and there was the cost of the notice for the tax deed and things of that kind." Duane Redfield testifies that when he took the tax deed "he had no agreement with Nancy Schwartz, or any of the Schwartz heirs, concerning this tax title. I took the tax deed for the purpose of

owning the property * * * About the time we got the tax deed, or possibly before, I had some conversation with Elbert Read in which he purported to be acting for the Schwartzes. * * * he was going to pay the taxes for them, and in order to protect ourselves, we took the tax deed. Q. And at the time you took the deed, it was the understanding that if they would raise the amount of your claim, you would deed the property over? A. I don't remember whether that was the conversation or not. I recall talking to him and that he was the agent for them, but I don't know that there was any length of time to redeem the place. Q. But it was the understanding at the time you took the tax deed that if they did raise the amount of your claim, you would turn it back? A. We did turn it back. Q. That doesn't answer my question. A. I believe I told Mr. Read I would turn it back if they paid the taxes. I think that is correct. Q. And that was the understanding between you and Elbert at the time you took the tax deed? A. Yes, sir. * * * After we took the deed we claimed to be the absolute owners. * * * Q. I will ask you to state if it is not a fact that that conversation just had to do with redeeming the property prior to the time you got the tax deed? A. Yes, sir. Q. And after you took the deed it was all off? A. Yes, sir." He testifies that "When we conveyed back to Mrs. Schwartz, I don't think we charged her more than the amount of the claim we had against the property. The place is worth more than $276.49." (The defendant Home Building & Loan Association loaned $600 on it.)

I think the record plainly shows an intention and understanding on the part both of Nancy Schwartz and the Redfields that Nancy Schwartz was to have the right to redeem and that she did redeem the property for the amount that would have to be paid to the auditor on making redemption.

Whether a subterfuge or not Mrs. Schwartz was as to the holder of her note and mortgage disabled from obtaining a hostile title based upon the nonpayment of taxes even though such title had already been consummated in a stranger. Her disability to acquire the tax title did not end with the execution of a tax deed and the transmission of a new and independent tax title to a stranger. The delinquent taxes were for the year 1920. The tax sale was the tax sale in 1921. Schwartz died in

July, 1922. The right to redeem then had more than two years to run. By Schwartz' death his widow, who had not signed the contract with Middaugh, became a tenant in common with the other owners of the land. Van Veen v. Van Veen, 213 Iowa ——. The tax deed was not issued until July 16, 1925.

In Dayton v. Rice, 47 Iowa 429, 431, it is said:

"But it is claimed that the relations of these parties are entirely changed by the fact that the lands had been sold for taxes when the sheriff's sale under which plaintiff claims was made. The tax sale was made in October, 1871, and the treasurer's deed was executed in October, 1874. The sheriff's sale was made subject to redemption on the 2d day of May, 1874. Plaintiff was not entitled to a sheriff's deed until the 2d day of May, 1875. The mortgagor still retained the right to possession, and the right to redeem from the sheriff's sale, and this right continued until six months after the treasurer's deed was made, and for nearly two months after the Patrick deed was executed. During all this time the primary obligation of paying these taxes rested on W. S. Rice. . If plaintiff had redeemed for the purpose of preserving his security, Rice might have redeemed from plaintiff at any time before he was entitled to a sheriff's deed, by paying the original debt, with the taxes added. When, therefore, the property was purchased at the sheriff's sale, plaintiff had a right to suppose that Rice would remove the incumbrance growing out of unpaid taxes, as it was his duty to do. The purchasing in of the outstanding tax title from Patrick by Rice, whilst his right to redeem from the sheriff's sale existed, should be regarded in equity as a mere discharge of his obligation to redeem from the tax sale."

In Cowdry v. Cuthbert, 71 Iowa 733, plaintiff in 1880 sold land to Cuthbert, who agreed to pay all taxes and took possession. The land was sold for taxes of 1876 to Simmons, who in 1881 obtained a tax deed and under it demanded possession. Cuthbert prior to the execution of the tax deed had notified plaintiff to pay the taxes and that no more payments would be made under the contract until redemption was made. In 1881 Simmons conveyed to Cuthbert by warranty deed. The court said:

"Under the contract the plaintiff and Cuthbert occupied the position of vendor and vendee. The former held the legal,

and the latter the equitable title. We also incline to think they should be regarded as mortgagor and mortgagee, (Code, Section 3329;) the plaintiff being the mortgagee, and Cuthbert the mortgagor. We think it is well settled by the authorities that a mortgagor cannot acquire a tax title to the prejudice of the mortgagee. This rule is based possibly on the thought that the mortgagor was bound to pay the taxes. In this case, the most that can be said is that Cuthbert obligated himself to pay all taxes lawfully imposed on the premises after he became the purchaser. He was not bound to pay the prior taxes. But, as vendee or owner of the equitable title in possession, he was authorized to redeem from the prior tax sale; and, when the expiration notice was served on him, we think it was his duty to do so. Rice v. Nelson, 27 Iowa 148; Hunt v. Rowland, 22 Id., 53; Stears v. Hollenbeck, 38 Id., 550; Fair v. Brown, 40 Id., 209. Whatever was paid to effect such redemption would amount to a payment of so much of the purchase money due the plaintiff. Such being the duty of Cuthbert, it follows that he cannot be permitted to set up such tax title as against the plaintiff. His purchase of such title, under the agreed statement of facts, amounted simply to a redemption which inured to the benefit of the plaintiff. Counsel for the defendants cite, and seem to rely greatly on, Alexander v. Sully, 50 Iowa 192; but it is, we think, clearly distinguishable.''

(Note the distinction of Alexander v. Sully, 50 Iowa 192, cited in the majority opinion.)

In Sorenson v. Davis, 83 Iowa 405, the owner of the lots, Brown, in 1856 gave a bond for deed to Baldwin Dodge & Company composed of Baldwin, Dodge and Tuttle. In 1857 pursuant to the bond, Brown executed deed to Baldwin in trust for Reed and others. Tax deeds were executed to different persons for taxes accruing while Baldwin and Brown held the legal title. The grantees in the tax deeds conveyed to Baldwin and Dodge to whom it seems tax deeds were also executed. Neither Baldwin nor his firm Baldwin, Dodge & Company nor Dodge prior to the tax deeds had any interest in the lots. The deed to Baldwin was in trust for Reed and others for convenience. The court said:

''It is a well-established principle that a tenant in common

cannot acquire title adverse to his co-tenants by purchase at tax sale; 'he will be regarded as holding the title he thus acquires in trust for his co-tenants, until the presumption is repelled by their refusal to contribute in payment of his outlays.' Weare v. Van Meter, 42 Iowa 128; Fallon v. Chidester, 46 Iowa 593; Austin v. Barrett, 44 Iowa 488. As trustee, Baldwin stood for, and in the place of, Reed and the others for whom he held the legal title, and could not acquire any interest in the land adverse to them. Had Reed and the others acquired these tax titles, they would be regarded as holding them in trust for their co-tenants. We think the reason for the rule applies with equal force to their trustee. We have seen that Dodge did not have any interest in the property that would prevent him from having alone acquired a valid tax title to it. His title, however, is jointly with one who could not acquire such a title. If the trustee may not acquire a tax title to himself as against the co-tenants of his *cestui que trust*, surely he should not be allowed to do so by joining with one who might have alone acquired such a title. Baldwin should not be permitted to do indirectly what he could not do directly. Dodge having taken title jointly with Baldwin, who was incapacitated from doing so, the whole title must fail. Spicer v. Rowland, 18 Pac. Rep. (Kan.) 908. One J. M. Phillips purchased certain lots at tax sales, and received deeds therefor, and afterwards, on December 5, 1873, conveyed to John T. Baldwin and G. M. Dodge. It is contended that this purchase by Phillips extinguished the patent title, and, therefore, dissolved the co-tenancy, and that either co-tenant might acquire this new title. The reason that would not allow the co-tenant to purchase this new title originally certainly should incapacitate him from afterwards purchasing it to the prejudice of his co-tenants."

While this case is before us I call attention to the fact that it disposes of the claim of the Home Building & Loan Association. This association examined the abstract of title. It was informed of the title of the husband, John W. Schwartz, of the execution of the mortgage by him and the wife Nancy Schwartz, of his death, of the marriage relationship between him and Nancy Schwartz, of her survival, and that the deed of the tax title was to the mortgagor. If inquiries which the abstract suggested had been made the Home Building & Loan Association would have found that Nancy Schwartz was one of the mortgage

debtors, that she had mortgaged her interest, that she had covenanted to pay the taxes, that her relationship to the mortgagee was such that she could not, directly or indirectly, acquire a tax title; that the purchase by her from Redfield heirs was in law a redemption from the tax sale.

This Court said in Sorenson v. Davis, 83 Iowa 405, 410:

"It is contended that the appellant is entitled to protection as a remote purchaser in good faith for value. While it is true the chain of deeds from Baldwin & Dodge to the appellant Davis is connected and complete, and vests in him the moiety that Baldwin held in trust, it is equally true that the appellant Davis was notified by the records that Baldwin only held an undivided half; that he was tenant in common with Brown, and with the plaintiffs after Brown's death. He must be taken to have known that, as such tenant in common, Baldwin could not alone, or jointly with Dodge, acquire title under the tax deeds adverse to his co-tenants. The deed from Baldwin & Dodge was not an ouster of the co-tenants of Baldwin, but simply transferred the co-tenancy from Baldwin to his grantees. The limitation did not commence to run from the time of obtaining an adverse title, but from the time of ouster. Robinson v. Lake, 14 Iowa 421. The appellants having purchased with constructive notice of Baldwin's incapacity to acquire title as against his co-tenants under the tax sales, they are not entitled to protection by reason of being remote purchasers for value; and, there being no ouster the plaintiff's action is not barred by the provisions of Section 2529 of the Code. Neither is it barred by Section 902, because it is not an attack upon the validity of the tax sales and deeds, but upon the capacity of Baldwin to acquire title thereby. Austin v. Barrett, 44 Iowa 488."

The Association, therefore, was charged with notice that Mrs. Schwartz did not by the purchase acquire a tax title good as against the mortgage. Austin v. Barrett, 44 Iowa 488. See, also, Hunt v. Rowland, 22 Iowa 53; National Surety Co. v. Walker, 148 Iowa 157; Napper v. Fitzpatrick (Mich.), 160 N. W. 400.

In Phillips v. Wilmarth, 98 Iowa 32, Phillips and Hepburn were tenants in common. Phillips died and his interest passed to plaintiffs. Hepburn died and defendants were his heirs.

After the death of Phillips the land was sold for delinquent taxes and tax deed issued to Churchman. Churchman conveyed to one of the defendants. The court said:

"It is well settled that a tenant in common cannot acquire title to the subject of the tenancy, adverse to his co-tenant, by means of a tax title, and this is true whether the tax deed is executed to his tenant, or his grantor. He will be presumed to hold the title thus acquired in trust for his co-tenants, until the presumption is shown not to be well founded, by the refusal of the co-tenants to contribute to the payment of the necessary expenses incurred to obtain the tax title. Sorenson v. Davis, 83 Iowa 406 (49 N. W. Rep. 1004); Fallon v. Chidester, 46 Iowa 593; Austin v. Barrett, 44 Iowa 488; Weare v. Van Meter, 42 Iowa 128. In this case it does not appear that the plaintiffs or any one through whom they claim title, refused to contribute toward the expenses incident to the acquiring the tax title; and it is shown affirmatively that the land was permitted to go to tax sale by the owners of Hopewell Hepburn's estate, for the purpose of extinguishing the title of his co-tenants, and that the tax sale and subsequent conveyances were for the benefit of the Hepburn heirs, who are the defendants in this case."

Doud v. Blood, 89 Iowa 237, 239, where it is said:

"The defendants claim title to the land as against the plaintiff's mortgage because of the tax deed to Adams. It is true that the said Emeline Campbell claims title under subsequent tax sales. But these sales and deeds were made at a time when she was under a legal obligation to pay the taxes, and can not be allowed to affect her title under the tax deed to Adams and the conveyances from Blood. There is enough in this case which requires consideration without elaborating the principle just stated, which is one of the elementary doctrines pertaining to tax titles. Without stating all of the facts, it is enough to say that the defendants, when they secured tax titles subsequent to acquiring the title under Adams and the quitclaims under Blood, were merely paying their own taxes."

In Dubois v. Campau, 24 Michigan 360, 370, it is said:

"And though Palms, the purchaser, might assert his title against all the owners, as he violated no duty and was guilty

of no wrong; yet Joseph Campau, the party thus in default, when he should subsequently purchase in the title so sold, would be thereby merely correcting the wrong he previously committed; and the payment to the purchaser and conveyance to himself, would operate merely as a *payment* of the tax, and give him no greater rights than if he had paid it when it became due, as it was his duty to have done. To allow him to set it up as a title to defeat that of the other owners, under such circumstances, would be to enable him to take advantage of his own wrong to the injury of others, and to encourage fraud.''

In Boyd v. Jensen, 122 Me. 31, 118 Atl. 718, it is said:

''The defendant sets up in defense a tax deed to one William Hebert, and a deed from Hebert to himself. It is conceded that the tax was duly assessed, the property properly advertised and sold, and the sale therefore valid. The tax for non-payment of which the sale was had was assessed in 1914. This the defendant was under obligation to pay. His mortgage contained an agreement binding him to pay this tax. He now seeks to take advantage of his failure to keep his contract. The law applicable to this situation is thus stated by the Maine court in Dunn v. Snell, 74 Maine 24: 'One whose duty it is to pay the taxes upon land to prevent a sale of the same, cannot acquire a title by such sale and conveyance as against the real owner, but the vendee's deed will be treated as void from the beginning.' See, also, Varney v. Stevens, 22 Maine 331, and Burgess v. Robinson, 95 Maine 127. In other jurisdictions many other cases to the same effect are found. It is unnecessary to cite them. Several such authorities are collated in a note to McAlpin v. Zitser, (Ill.), 10 N. E. 902, which thus felicitously states the principle: 'One who is under a legal or moral obligation to pay a tax is precluded from acquiring a valid title based upon its nonpayment.' ''

In Alexander v. Sully, 50 Iowa 192, relied upon in the majority opinion, after referring to the principle that where owners are in possession under an imperfect title one can not purchase an outstanding title and thus oust the other, the court proceeds:

''But this principle does not extend to a tenant in common

after eviction. Coleman v. Coleman, 3 Dana, 398. It is not affirmatively shown in the present case that either of the joint owners were in possession at the time Evans obtained the tax title, or at the time that plaintiff purchased of him. On the contrary, we think it is fairly to be inferred from the record that neither of them was in possession at the times aforesaid. If the superior title did not in and of itself amount to an ouster and eviction, we think the principle, under the circumstances, must be the same as if it did have that effect. As neither of the joint owners was in possession, the outstanding title was not purchased to protect the possession or any other right either ·of the former joint owners then had. Whatever title they previously had was merged in the superior title, and either could purchase for his own exclusive benefit as well as a stranger to the previous title could.''

In Crawford v. Meis, 123 Iowa 610, also relied upon by the majority, it is said:

''It is true, as contended for by counsel for appellants, that where there exists, as between joint tenants or tenants in common, a reciprocal duty of protecting the joint estate, one may not absorb or get rid of the interests of his co-tenant by allowing the property to go to tax sale, and thereunder acquire title to the entire estate through the medium of a tax deed. And this is true whether the tax deed is procured to be executed directly to the tenant or to another through whom such tenant claims as grantee. Weare v. Van Meter, 42 Iowa 130; Austin v. Barrett, 44 Iowa 490; Blumenthal v. Culver, 116 Iowa 326; Phillips v. Wilmarth, 98 Iowa 32. It is to be noted, however, that in each of the cases cited, and in others where the like rule is declared, the co-tenants were in possession or entitled to possession, and each was charged with the duty of protecting the joint estate. And it is under such circumstances that payment by one co-tenant is held to be presumably for the benefit of all, and he who pays may charge the several interests of his co-tenants with the proportionate parts which such co-tenants should have paid. Cooley on Taxation, 467. The reason for the rule seems to be that, there being a reciprocal ·duty on the part of the co-tenants to pay the taxes assessed, and as a part of the taxes for which the land is sold is a claim upon the pur-

chaser's share, the sale is based in part upon his own default, and it would be inequitable to permit him to profit by his own wrong. 11 Am. & Eng. Ency. 1082 (1st Ed.). Here, however, the co-tenants in remainder were not in possession, nor did they have any right of possession, and they were not chargeable with the duty and responsibility of making payment of taxes. As between themselves, it cannot be said that there were any reciprocal rights or duties. The duty of paying taxes rested upon the life tenants, and, should one of the remaindermen have seen fit to pay taxes allowed to become delinquent for the protection of the estate, he could not recover any portion of the amount so paid from his co-remaindermen. There being no duty to pay, there could be no such thing as an enforced contribution. It must be manifest that, as applied to such a case the rule contended for by counsel for appellants can have no force or application. Quite to the contrary, the principle which should be made to govern is that which finds expression in the opinion in the case of Alexander v. Sully, 50 Iowa 192. It was there held that one who, prior to the issuance of a tax deed, had occupied the relation of a co-tenant in remainder, and whose estate had been terminated by such deed without his fault or wrong, may purchase the entire estate of the holder of the tax title; and this he may do for his own exclusive benefit. We are content to follow the doctrine of the case cited, and, giving the same application to the case before us it must be said that there was no restriction upon the right of the grantees of David Crawford to acquire and hold title for their own benefit. This being true, it remains to be said that the title of the present owners, derived through such grantees, is not subject to attack at the hands of plaintiffs and intervener. Passing other matters of defense alleged and insisted upon, we conclude that with respect to the lands under present consideration the decree of the trial court was right, and should be affirmed.''

These cases clearly do not apply to the facts of the present case. As between the widow and the plaintiff the widow as obligor and mortgagor was under the primary duty of paying the taxes. If she had paid them she could not have charged them against plaintiff. On the other hand if plaintiff had paid them she could have charged them against the widow. The husband's sale to Middaugh was under contract to which the widow

was not a party. As between Middaugh and the widow, therefore, Middaugh was under no primary duty to pay the taxes on her contingent (afterwards consummate) interest. Middaugh's possession is not shown to have been adverse to defendant widow as to her third. Middaugh and defendant widow were tenants in common. No reason is shown why Middaugh could not be required to account to defendant for her share of the rents and profits, or why either of them paying the taxes would not be entitled to credit for the other's share. Defendant and Middaugh (or defendant's widow and her husband's heirs) did become presumptively tenants in common on the husband's death. Defendant was neither evicted nor had she done anything amounting to an eviction of her co-tenants. She could not of her own mere volition oust the plaintiff's mortgage. Patty v. Payne, 178 Iowa 593. Alexander v. Sully, 50 Iowa 192; Crawford v. Meis, 123 Iowa 610, have been distinguished and are clearly not applicable to the facts which we have here. Shell v. Walker, 54 Iowa 386; Clarke v. Dirks, 178 Iowa 335; Mitchell v. Vest, 157 Iowa 336, 344; National Surety Co. v. Walker, 148 Iowa 157; O'Dell v. Browning, 182 Iowa 223; Ward v. Meredith, 186 Iowa 1108; Arends v. Frerichs, 192 Iowa 285, 294.

The co-tenant in the case before us (defendant) is a mortgagor. Her adversary is not a former co-tenant who has been ousted by the holder of her note and her mortgage given by her upon a contingent interest which had ripened into a title in fee. She not only had the right to pay the taxes but she was under the duty of paying them. Even though she had not covenanted to pay the taxes, she had mortgaged her interest to pay her own obligation. By her mortgage her interest was subject to the lien which she had given for her debt. She had made the real estate a fund for the payment primarily of her debt. The right of the holder of the mortgage was a superior lien, created by her upon her interest. Her interest was not merely co-ordinate with and independent of the other interests, the owner of which were primarily bound to pay the taxes upon them. The case here is not one of a common default of the owners of independent interests in the payment of their respective primary liabilities. The plaintiff here had the right to have the taxes on the entire tract paid by the owners, including Mrs. Schwartz (defendant widow). The payment of

the taxes would not diminish the plaintiff's interest in the mortgaged property and Mrs. Schwartz's payment would not entitle her to contribution from or to repayment by plaintiff. In whatever way she chose to pay the taxes she would be discharging a liability upon her property which was the primary liability upon her interest and not upon the plaintiff's interest. The alleged eviction was the eviction of Middaugh, not of Mrs. Schwartz. She had no right to claim as against the holder of the mortgage which she had given that she had been evicted by her failure to pay taxes.

As the case appears to me, therefore, the defendant Nancy Schwartz in taking conveyance from the owner of the tax title was, as to the plaintiff's mortgage, merely discharging a duty which as between her and the plaintiff was her duty and consequently as the legal result restoring her property to the lien of the mortgage which she had placed upon it and reinstating the liability of her property to the payment of her debt to which she by her contract had devoted it. The Home Building & Loan Association has not proved itself to be a purchaser for a valuable consideration without notice. (Code, 1927, Section 10105.) On the contrary, as shown above and as held in Sorenson v. Davis, 83 Iowa 405, 410, it is chargeable with constructive notice of the superiority of plaintiff's mortgage. I think the judgment should be reversed.

DE GRAFF, ALBERT, and KINDIG, JJ., join in this dissent.